A93A1727. DYCHES v. McCORKLE et al.
A93A2361. DYCHES v. YOUNG et al.
(441 SE2d 518)

BEASLEY, Presiding Judge.

The question in these appeals is whether Dyches has a triable claim for damages against the Chatham County Metropolitan Planning Commission (MPC) and Board of Commissioners, as a result of the disapproval of his preliminary plan for a subdivision on the ground that his drainage plan did not comply with the Subdivision Regulations of Chatham County.

On February 12, 1992, Dyches submitted his application to the MPC requesting approval of a preliminary plan for Phase I of Chriswoodelle Subdivision on the Isle of Hope in Chatham County.

The Isle of Hope is described as an area of great charm, with high land values. Poor drainage, particularly during heavy rainfall on a high tide, is a recurrent annoyance. Fears that a new subdivision might disrupt the quiet environment and worsen drainage problems generated considerable public opposition to Dyches' proposal. Initial concerns over other matters such as traffic were allayed, and the focus of the public controversy became drainage. The Dyches property is located on a section of Isle of Hope called Parkersburg, which is drained by a county drainage ditch or canal that flows through a tidegate ultimately into the Skidaway River. Rain water flows toward the lowest point in the drainage area, which is a patch of wetlands, a small portion of which lies within the proposed subdivision. Dyches was granted permission by the U. S. Army Corps of Engineers to place fill dirt in his portion of the wetlands. Neighbors were concerned that construction of the subdivision would heighten existing drainage problems, by decreasing the storage area for rain run-off by filling wetlands and by increasing the speed of run-off onto adjacent properties.

The Subdivision Regulations require the subdivision permit to be denied if the projected increased run-off from the subdivision would overload the capacity of the channel downstream or increase flood stages upstream, unless improvements are made to provide storage capacity for the additional run-off to prevent such adverse effects, and unless equivalent flow and storage capacity is replaced and maintained within a flood plain easement. Sub. Reg. § 702.01.3b. In addition, all subdivisions shall be provided with drainage structures sufficient to accommodate a 50-year storm flood. Sub. Reg. § 601.02.

The MPC, charged with responsibility for administering the Subdivision Regulations, has the duty to inspect and approve or disapprove preliminary plans for subdivisions and to recommend approval or disapproval of final plats. Sub. Reg. § 700. If the MPC finds that the proposed design of the subdivision shown on the preliminary plan

complies with the design requirements of the subdivision regulations, it shall approve the preliminary plan; if the MPC disapproves a preliminary plan, it shall give the developer the reasons for such disapproval in writing. Sub. Reg. § 702.04. When a developer receives approval of the preliminary plan, he may proceed with such things as opening streets and laying out lots. Sub. Reg. §§ 702; 702.04. With approval of the final plat, the developer can sell lots or construct houses.

Grading and drainage plans are to be approved by the city or county engineers and by the MPC to insure conformity with all applicable requirements of the ordinance and other city/county code provisions. Sub. Reg. § 700. However, the MPC staff has no technical expertise in drainage matters; and, prior to submission of Dyches' application, it had been the unvarying custom of the MPC not to require developers to submit a grading and drainage plan prior to approval of a preliminary plan, but rather to approve the preliminary plan subject to later approval of drainage by the city or county engineer. The MPC was not informed that this practice was inconsistent with the Subdivision Regulations until this controversy arose. Beginning with Dyches' application, the MPC process was changed so that a developer seeking approval of a preliminary plan must now submit a grading and drainage plan.

Consistent with the MPC's customary process, the drainage information submitted by Dyches with his initial application was sufficient to warrant the MPC staff's and county engineer's recommendation of approval with conditions. No violations of Subdivision Regulations were found.

Following a hearing, the MPC on May 27, 1992, denied approval of the preliminary plan "due to the lack of specific information needed to determine the suitability of the site for a major subdivision." In its decision, the MPC stated that it needed additional information concerning, among other things, storm water drainage. When the members of the MPC discussed their decision with the staff, the major concern of several members was the containment of increased run-off. Information was requested from Dyches concerning run-off during floods and the effect that the site fill would have on run-off. After the May 27 meeting, the MPC staff engaged in discussions with Dyches and his engineers and informed them that a drainage plan would be needed.

Dyches appealed the MPC's denial of his preliminary plan to the Board of Commissioners, which was likewise provided with a recommendation by the MPC staff and county engineer. Pursuant to Dyches' request that the Board place this matter on its agenda, it held public hearings on June 26 and July 17, 1992. At the latter hearing, the Board voted to uphold the MPC's decision.

On July 20, Dyches filed a petition for mandamus and damages against the commissioners, in their representative capacities and individually. He stated that in accordance with administrative appeal procedures he had appealed the MPC's denial of the preliminary plan to the county commission. On November 5, 1992, the superior court granted the commissioners' motion to dismiss the petition on the ground that the Subdivision Regulations confer upon the MPC and not the commissioners the duty to approve or disapprove preliminary subdivision plans. Dyches appealed to the Georgia Supreme Court.

Meanwhile, Dyches returned to the MPC at its August 18, 1992, meeting with a drainage study by his engineers. This study concluded that the impacts of the proposed development would be minor and that the drainage area would not be adversely affected if proposed improvements were put in place. A drainage study does not, however, contain such things as construction drawings and specifications of drainage facilities, and it is not a drainage plan. The MPC tabled Dyches' application because he did not submit a complete set of drainage plans as required by the Subdivision Regulations. Dyches' engineers subsequently submitted a set of grading and drainage plans to the county engineer, who recommended approval.

Dyches' application was considered by the MPC at a public hearing on December 1, 1992. At that time, Dyches submitted a complete set of grading and drainage plans to the MPC for the first time.[1] At the hearing, residents requested that the proposed development be denied because of the drainage problem. Representatives of engineering firms retained by the residents stated that the proposed drainage system would not be adequate to accommodate the drainage from this development, because this is low land and the storage capabilities of the site will be taken away if it is filled properly. Assailing Dyches' engineering report's calculations and conclusions as to such things as storm water discharge, storage capacity, and excavation requirements, an Isle of Hope resident with an engineering background presented a list of reasons against approval of the application. An MPC member moved to deny the application based on "the need to protect the integrity of the neighborhood." Another member stated that the reason for the denial was based on "the quandary regarding the dispute between the learned engineers." The motion passed, with six members voting for it, two opposed, and one abstaining.

---

[1] At this meeting, it was announced that a letter from the county attorney stated that an amendment to the Subdivision Regulations, which had been passed by the MPC and gone before the county commission in July 1992, did not apply to Chriswoodelle Subdivision. Dyches states that this amendment gives the MPC express authority to deny approval of a preliminary plan based upon the public interest and was enacted for the purpose of defeating his application. However, there is no reference to the content of this amendment on the pages of the record cited by Dyches.

Pursuant to standard procedure, the MPC staff reviewed the minutes of the December 1 meeting and compiled a written decision based upon their opinion of the voting consensus. Since litigation was pending, they verified its accuracy with MPC members who had voted to disapprove the application, although this practice is not standard procedure.

The MPC decision states that its primary outstanding concern was the protection of adjacent properties from the potential flooding impacts of a 50-year storm event, following development of the site. The decision also states that the MPC could not conclusively find that the loss of the site's natural storm water drainage and retention/storage areas as a result of proposed filling would be effectively offset by the stormwater storage area proposed by Dyches.

This decision and other evidence show that there were MPC members who relied on the opinions of engineers opposing Dyches' drainage plan, rather than their independent review of the plan and the Subdivision Regulations, in making their decision.

On January 8, 1993, Dyches filed a petition for mandamus and damages against the members of the MPC in their representative capacities and individually. As to whether Dyches was entitled to approval of the preliminary plan, the legal and factual dispute centered upon the county drainage ditch and tidegate, a proposed storage pond within Dyches' property, and the extent to which replacing wetland with fill would aggravate flood "upstream," i.e., in higher portions of the Isle of Hope. After conducting a de novo trial, the court granted the petition for mandamus. Based upon an analysis of the conflicting expert opinions, and a comparison of their respective credibility, the court found that although the proposed plan would slightly increase flood stages upstream, the storage pond does in fact provide adequate additional storage to compensate for the increased run-off. The court also found that the subdivision, if built according to the proposed grading and drainage plan, would worsen flooding in the drainage area during the 50-year storm event, but only incrementally, and that the drainage problems in general at Parkersburg would be greatly ameliorated if the county would add one additional tidegate to its canal. Based on these findings, the court concluded that the preliminary plan application complied with Subdivision Regulations and must be approved.

The superior court issued its mandamus order on March 11, 1993, directing the MPC to approve the preliminary plan at its next regular meeting. The court later gave the MPC until March 24 to file an appeal or approve the subdivision plan. At its regularly scheduled meeting on March 16, the MPC unanimously passed a motion giving its staff authorization to carry out the court order once a decision was made to appeal. No appeal was filed, and at its March 26 meeting, the

MPC approved the preliminary plan for Phase I and the master plan for the proposed subdivision.

The next month, at its April 20 meeting, the MPC approved Dyches' application for approval of the preliminary plan for Phase II of Chriswoodelle. The application was approved with five members voting in favor and one abstaining. Umbrage was taken by certain MPC members because of threats which they perceived Dyches' attorney to have made against them. At trial, MPC members testified that they did not know Dyches personally, that they had nothing against him, and that they were just non-paid business people and citizens trying to make the right decision.

The superior court subsequently granted summary judgment in favor of the MPC members on Dyches' claim for damages. Based on the MPC's sovereign immunity, the court held that the MPC members are immune from suit in their official capacities. As to whether Dyches can recover against the MPC members in their individual or personal capacities, the court held that he must show that they acted maliciously toward him and that the necessary malice cannot be inferred from decisions concerning one matter or one petition, even if those decisions are without merit. The court ruled that plaintiff had not introduced sufficient evidence to support an inference of malice.

The Supreme Court transferred Dyches' appeal against the county commissioners to this court because the mandamus became moot and the remainder of the appeal raises issues within this court's jurisdiction. This has become Case No. A93A1727. On motion by Dyches, it was consolidated with his appeal against the MPC in Case No. A93A2361.

1. With respect to the issue of whether the county commissioners can be held liable for damages,[2] Dyches argues in Case No. A93A1727 that as the final decision maker in the subdivision approval process, the county commission has the responsibility and obligation to hear appeals from MPC decisions on preliminary plans because the MPC is an advisory body with no authority to bind the county by its decisions.

The enabling statute for planning commissions was enacted in 1957. Ga. L. 1957, p. 420. As amended, the 1957 general Act was codified as Ga. Code Chapter 69-12 (Code Ann. §§ 69-1201 through 69-1233). Code Chapter 69-12 "was not carried forward into the Code of

---

[2] Although the commissioners argue that the issue relating to damages, like the mandamus issue, is moot, it is not. Dyches seeks damages resulting from additional expense and delay in the approval of his preliminary plan. If the county commissioners had approved it, the additional expense and delay would have been reduced. The fact that the Supreme Court transferred this appeal to this court rather than dismiss it indicates that it, too, did not consider the appeal moot.

1981, apparently because of the provision of Const. 1976, Art. IX, Sec. IV, Par. II (Ga. Code Ann. § 2-6102), which provided that 'The General Assembly shall not, in any manner, regulate or restrict or limit the power and authority of any county, municipality, or any combination thereof, to plan and zone as herein defined.' " Code Chapter 69-12, Editorial Note to Code of 1981.[3] We agree with the Attorney General's opinion that the 1976 constitutional provision invalidated the 1957 Act because the Act regulated the zoning and planning power of cities and counties by establishing uniform procedural mechanisms for the implementation of that power. Op. Atty. Gen. 77-5. However, as pointed out, the invalidation of the general legislation did not rescind all those local ordinances enacted pursuant to it, and the local ordinances remain effective until amended or repealed by the city or county. Id.

The Savannah Metropolitan Planning Commission for Chatham County was established in 1955 by local act. Ga. L. 1955, p. 2535. *Johnson v. Chatham County*, 167 Ga. App. 283, 284 (2) (306 SE2d 310) (1983). By resolution in 1961, the county commission made it a joint city/county planning commission and elected to come within the scope of the 1957 Act as amended.

Section 3 of the 1957 Act (former Code Ann. § 69-1203) vested a planning commission with the principal power and duty to: (1) prepare a master plan; (2) prepare and recommend for adoption to the appropriate governing authority or authorities a zoning ordinance or resolution and map; (3) prepare and recommend for adoption regulations for the subdivision of land and to administer the regulations that may be adopted; and (4) prepare and recommend for adoption a plat or plats for an official map.

Consequently, the function of a planning commission, as a general rule under zoning laws, is to act as an advisory or recommending agency to the legislative department of a city or county in the passage of zoning ordinances and amendments. *Macon Assn. for Retarded Citizens v. Macon-Bibb County Planning &c. Comm.*, 252 Ga. 484, 485 (314 SE2d 218) (1984); *Royal Atlanta Dev. Corp. v. Staffieri*, 236 Ga. 143, 145 (223 SE2d 128) (1976) and cits. However, both the enabling legislation and the Subdivision Regulations of Chatham County give the MPC authority to administer subdivision regulations after adoption by the governing authority. The Subdivision Regulations also give the MPC authority to give approval or disapproval to pre-

---

[3] However, Ga. Const. 1983, Art. IX, Sec. II, Par. IV states that authorization of the governing authority of each county and of each municipality to adopt plans and exercise the power of zoning "shall not prohibit the General Assembly from enacting general laws establishing procedures for the exercise of such power." In 1985, the General Assembly enacted such laws. OCGA Chapters 36-66; 36-67; 36-67A.

liminary plats and to recommend approval or disapproval of final plats,[4] although the enabling legislation (former Code Ann. § 69-1217) gave the planning commission authority to approve or disapprove both preliminary plans and final plats.

The first question in this case is whether the county commissioners, by refusing to overturn the MPC's disapproval of Dyches' preliminary plan, breached a duty owed to Dyches. The Subdivision Regulations make clear that the MPC and not the county commission has been given the duty of approving or disapproving preliminary plans, and no administrative appeal to the governing authority has been provided.[5] See also *Royal Atlanta Dev. Corp.*, supra.[6] Consequently, the county commissioners are not chargeable with any breach of duty.

2. In Case No. A93A2361, Dyches contends that the court erred in holding that the MPC members could only be held personally liable based upon a showing that they had acted maliciously and not for the negligent performance of their ministerial functions nor for the wilful and wanton abuse of their discretionary authority. Dyches argues that there are material issues of fact as to whether the MPC members acted maliciously, wilfully, or wantonly. He also charges them with bad faith.

Although the MPC does not have discretion to deny an application that is in compliance with subdivision regulations, it is questionable that its decision to disapprove the preliminary subdivision plan is aptly characterized as a ministerial act. See *Vertner v. Gerber*, 198 Ga. App. 645, 646 (402 SE2d 315) (1991); *Rogers v. Mayor &c. of Atlanta*, 110 Ga. App. 114, 121-122 (4) (137 SE2d 668) (1964).

In any event, whether the MPC members have immunity from suit is determined by OCGA § 51-1-20 (a). It does not distinguish between ministerial acts and discretionary functions. It provides, "A person serving with or without compensation as a member . . . of any local governmental agency, board, authority, or entity shall be immune from civil liability for any act or any omission to act arising out of such service if such person was acting in good faith within the scope of his or her official actions and duties and unless the damage or injury was caused by the willful or wanton misconduct of such person." OCGA § 51-1-20 (a); *Johnson v. MARTA*, 207 Ga. App. 869,

---

[4] Apparently, § 703 of the Subdivision Regulations concerns the county commission's approval or disapproval of the final plat. Section 703 does not appear at the page of the record cited by Dyches, and we have been unable to find it, so we are unable to review it.

[5] This does not mean that an aggrieved applicant is remediless. Dyches obtained mandamus relief in superior court.

[6] *Royal* held that approval or disapproval of a planned unit development by a planning commission, as opposed to issuance or withholding of a building or occupancy permit by the building inspector, was not an enforcement decision under former Code Ann. § 69-1211 (1) and thus was not appealable to a Zoning Board of Appeals.

871 (2) (429 SE2d 285) (1993). See also *Bunkley v. Hendrix*, 164 Ga. App. 401 (296 SE2d 223) (1982).

Although OCGA § 51-1-20 (a) makes reference to good faith and not malice, the two concepts are interrelated. Neither, however, embraces negligence. " ' "Bad faith" is not simply bad judgment or negligence, but it imports a dishonest purpose or some moral obliquity, and implies conscious doing of wrong, and means breach of known duty through some motive of interest or ill will. (Cit.)' [Cit.]" *Hendon v. DeKalb County*, 203 Ga. App. 750, 758 (5) (417 SE2d 705) (1992). "Malice may consist in personal spite or in general disregard of the right consideration of mankind, directed by chance against the individual injured. [OCGA § 51-7-2.]" *City of Hawkinsville v. Wilson & Wilson*, 231 Ga. 110, 111 (3) (200 SE2d 262) (1973).

Nor do the concepts of wilful or wanton misconduct embrace negligence. "Wanton and wilful conduct differs from gross negligence. [Cit.] Wilful conduct is based on an actual intention to do harm or inflict injury; wanton conduct is that which is ' "so reckless or so charged with indifference to the consequences . . . as to justify the jury in finding a wantonness equivalent in spirit to actual intent." (Cit.)' [Cit.]" *Hendon*, supra at 758.

It follows that the MPC members cannot be held personally liable based upon the mere negligent performance of their duties. See also *Johnson v. Chatham County*, supra (holding that a suit against the MPC is in effect a suit against a political subdivision and that the MPC is afforded sovereign immunity from a negligence claim).

The MPC members are not chargeable with bad faith or wilful or wanton misconduct arising from their May 27, 1992, denial of Dyches' application, because it was not in compliance with the requirement in the Subdivision Regulations that it be accompanied by a set of grading and drainage plans. Dyches argues that they nonetheless can be held liable, because they violated his equal protection rights by continuing to approve other preliminary plans in accordance with customary procedure despite the sudden reversal in his case. The MPC staff members' testimony upon which he relies in support of this allegation was that they did not recall how many preliminary subdivision plans subsequently have been required to have a separate drainage plan and were not aware of whether any such preliminary plans had been accompanied with a separate drainage plan as a requirement for approval. In contrast, one of the MPC members gave positive testimony that other applicants have been required to submit drainage plans as part of their application for preliminary approval. Dyches has failed to show discriminatory enforcement of the local ordinance. See *Gouge v. City of Snellville*, 249 Ga. 91, 94 (4) (287 SE2d 539) (1982) and cits.

Likewise, the MPC members are not chargeable with bad faith or

wilful or wanton misconduct arising from their December 1, 1992, denial of Dyches' application, because there is conflicting expert opinion evidence sufficient to create genuine issues of material fact and law on the question of whether the applicant met applicable requirements. This distinguishes *City of Hawkinsville,* supra, where the applicant for a business or license tax unquestionably met the only condition to its issuance, and plaintiff alleged a conspiracy as to certain city officials for wrongful denial.

According to Dyches, the real reason for the MPC's denial was not any objective criteria in the subdivision regulations but rather political pressure from neighborhood opponents to which MPC members bowed to further their own political interests. Notwithstanding this charge, there is insufficient evidence in the present record to support a finding of bad faith or wilful or wanton misconduct. See also *Hendon,* supra; *Johnson,* supra. The record is devoid of conduct that would lift the MPC members' shield of immunity. *McDay v. City of Atlanta,* 204 Ga. App. 621, 622 (1) (420 SE2d 75) (1992).

*Judgments affirmed. Cooper and Smith, JJ., concur.*

DECIDED FEBRUARY 28, 1994.

*Inglesby, Falligant, Horne, Courington & Nash, Thomas A. Nash,* for appellant.

*Chamlee, Dubus & Sipple, George H. Chamlee, Emily E. Garrard, Ranitz, Mahoney, Coolidge & Mahoney, Thomas J. Mahoney, Jr.,* for appellees.

