A05A0955. HANSE v. PHILLIPS et al.
(623 SE2d 746)

ANDREWS, Presiding Judge.

We granted Officer Sean Hanse's application for discretionary review of the trial court's order denying his motion for summary judgment. The issue on appeal is whether the trial court erred in not granting Hanse's motion for summary judgment on the grounds of official immunity. Because we conclude that Hanse was entitled to immunity from suit, we reverse.

In reviewing the denial of a motion for summary judgment, this Court conducts a de novo review of the law and the evidence. *Desai v. Silver Dollar City*, 229 Ga. App. 160, 163 (493 SE2d 540) (1997). Further, this Court construes the evidence and all inferences and conclusions therefrom most favorably toward the party opposing the

motion. *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991); *Moore v. Goldome Credit Corp.*, 187 Ga. App. 594, 596 (370 SE2d 843) (1988).

This case arose after a high-speed chase that ended when the fleeing suspect, Tonialo Dennis, struck a car driven by Terron Phillips, killing him and injuring the three children who were passengers in the car. Shamonda Phillips and Aneisha Holland (collectively Phillips) sued Fulton County, Police Captain Hayes, Dennis, Lasonya Bellamy, the owner of the SUV that Dennis was driving, and Hanse, the officer closest to Dennis when the accident occurred. The only remaining claims at the time of this appeal are those against Officer Hanse in his individual capacity.

1. Hanse filed a motion for summary judgment claiming that the decision to engage in the high-speed chase was discretionary and therefore he was entitled to official immunity. We agree.

Official or qualified immunity protects county police officers from personal liability for discretionary action taken within the scope of their official authority, and performed without malice or an attempt to injure. *Cameron v. Lang*, 274 Ga. 122, 123 (1) (549 SE2d 341) (2001). "This protection is particularly important in the context of a high speed pursuit where police officers must make a split-second decision on whether to initiate the pursuit or continue it and the type of risks to take." Id.

*Cameron* also notes that the U. S. Supreme Court has held that "qualified immunity is an entitlement not to stand trial rather than a mere defense to liability." Id. at 124 (1). And this "provides persuasive reasons for resolving the issue of . . . qualified immunity as early as possible in the legal proceedings." Id. The question of whether an officer is entitled to qualified immunity is a question of law for the court to decide. *Conley v. Dawson*, 257 Ga. App. 665, 668 (572 SE2d 34) (2002).

The evidence below was that on the evening in question, Hanse and other officers were conducting a road safety check. Hanse saw Lt. Michaud approach a stopped Suburban and talk to the driver who was later identified as Tonialo Dennis. As Michaud opened the SUV door, Dennis sped away. Lt. Michaud stated that "[a]s he [(Dennis)] was turning left to get back on the roadway, the door — my leg was up against the door, it spun me around." Michaud hollered to Hanse to go after the SUV and Hanse activated his lights and siren and pursued the SUV.

As Hanse pursued Dennis, he saw him disregard a stop sign, make several turns, and ignore a red light. Hanse called in on his radio and was given approval to continue the pursuit by Captain Hayes after Michaud informed Hayes that the SUV struck him. During the course of the pursuit, Dennis drove on the wrong side of

the road, crossed four lanes of traffic on I-85, and crossed both a grass and a concrete median. There was testimony that speeds reached 80 miles an hour in the fast lane of I-85. Hanse stated that Dennis slammed on his brakes at one point because he appeared unable to decide which way to go. After slamming on his brakes, Hanse stated that Dennis lost control of the SUV and slid into the dirt median, striking Phillips's car.

Dennis submitted an affidavit for purposes of this suit claiming that his SUV was "struck and pushed" by a Fulton County police vehicle. He stated that immediately after losing control of the vehicle, he hit Phillips's car.

Hanse denied striking the SUV and stated that he was approximately 50 yards away when the accident occurred. This is supported by the testimony of a witness who described the incident and stated that the driver of the SUV "faked like he was going to go 166 off the Langford Freeway, but at the last minute, he got back over. He jumped back over right there in that center media [sic]. And when he jumped over in that center media, that's when the green Malibu what Mr. Phillips was driving, the black Suburban hit his car and knocked him off the roadway, and he ran into the concrete bridge." Then the witness described it again, still without mentioning any contact between the Suburban and a police car. When questioned about any contact with a police car, the witness said "[m]aybe at one time, at one time." And, when asked where the contact occurred, the witness replied, "About a quarter of a mile before we got up to the merging lane where 166, Lakewood Freeway, and 75-85 breaks off." The witness never stated that the SUV lost control when the police car "bumped" him, but only stated that the SUV "sped up more."

There was also evidence introduced that the officer's General Orders Manual stated that "[t]o avoid being arrested, many motorists will take imperiling chances. Regardless of the extenuating circumstances, the pursuing officer shall not duplicate these hazards." Also, an officer must, in all cases, "operate his vehicle in a manner showing consideration for his own safety, the safety of the violator[,] and the safety of others who may be using the roadway." The manual also provides that "[d]eliberate physical contact between any two vehicles at any time will not be justified," and an "[o]fficer will not bump or ram a fleeing vehicle."

In ruling on Hanse's motion for summary judgment, the trial court's order concludes that although the decision to initiate and continue a chase was discretionary,[1] Hanse did not have discretion to

---

[1] A discretionary act is one which calls for the exercise of personal deliberation and judgment, which in turn entails examining the facts, reaching reasoned conclusions, and acting

violate county policy during the chase. The court found issues of fact as to whether Hanse had intentionally rammed the SUV.

It is not clear whether the trial court held that Officer Hanse was not entitled to official immunity as a matter of law or whether a question of fact remained concerning its applicability. See *City of Atlanta v. Heard*, 252 Ga. App. 179, 181 (555 SE2d 849) (2001). Likewise, it is unclear what disposition the dissent is advocating. It appears, however, that the dissent is stating that whether Hanse is entitled to official immunity is, contrary to the law stated above, an issue of fact for the jury to decide.

In *Cameron v. Lang*, supra, it was alleged that, during a high-speed chase, the police officer acted in reckless disregard for the public safety by running a stop sign and failing to use his car's siren and emergency lights. In finding that the trial court properly granted summary judgment to the law enforcement officers based on their official or qualified immunity from personal liability, the Supreme Court found that the law enforcement officers exercised discretion in responding to the emergency calls when they decided to engage the suspected car thieves in a high-speed pursuit. Id. at 125. Pertinently, in its analysis, the Court noted that the allegations that one of the officers, "ran the stop sign without turning on his blue lights or his siren *[does] not* change his decision to engage in a high speed pursuit into a ministerial act." (Emphasis supplied.) Id. See also *Logue v. Wright*, 260 Ga. 206 (392 SE2d 235) (1990), which held that "[t]he decision to rush to the scene of the disorder lay within [the officer's] discretion. . . . The fact that he did so negligently does not place him outside the rule. To say that it did would render the rule meaningless." Id. at 208 (1).

*Standard v. Hobbs*, 263 Ga. App. 873 (589 SE2d 634) (2003), is almost directly on point. Standard brought suit against a sheriff's deputy for damages for personal injuries that she and her daughter sustained when a suspect fleeing from a high-speed pursuit collided with her car. Standard argued on appeal that the trial court erred in ruling that the deputy's decision to continue the high-speed pursuit was a discretionary act. She claimed that because there was a written departmental policy, which the deputy violated, mandating that he end the pursuit, the decision was a ministerial rather than a discretionary duty. Id. at 875. In rejecting this contention, the Court held that the standard operating procedure (SOP) of the sheriff's office, while containing guidelines and boundaries prohibiting certain acts,

---

on them in a way not specifically directed. On the other hand, a ministerial act is commonly one that is simple, absolute, and definite, arising under conditions admitted or proved to exist, and requiring merely the execution of a specific duty. *Standard v. Hobbs*, 263 Ga. App. 873, 875 (589 SE2d 634) (2003).

clearly placed responsibility for the decisions inherent in a high-speed chase with the individual officer. The SOP stated: " 'The responsibility for the decision to pursue a suspected violator and the methods to be employed rest solely with the individual officer. In arriving at this decision, an officer must carefully consider all factors involved, all possible consequences, and the safety of citizens whose protection is the major objective.' " Id. at 877 (1).

In the instant case, the General Orders Manual states that "[t]he ultimate decision to initiate the pursuit of a fleeing vehicle is the responsibility of the initiating officers." And, "[i]t is the responsibility of the primary unit to reach a rational conclusion whether or not to pursue a fleeing vehicle." Also, "[t]he law permits officers who are engaged in hot pursuit or an emergency response to exceed the speed limit and to violate traffic regulations as necessary, but only: 1. If the emergency lights and siren are employed . . . and 2. If the utmost safety is insured for self and others." "In cases of on-sight pursuit of . . . actual or suspected criminals, an officer may proceed at such speed as is reasonable under the existing traffic conditions. . . . The officer should use discretion to determine if the apprehension of the offender is worth the danger presented to himself and to others."

Contrary to Phillips's argument, the manual clearly gives the officer discretion in carrying out a high-speed pursuit. Officer Hanse was performing a discretionary function in pursuing the suspect. That he may have done so in contravention of certain directives in the policy manual does not change this pursuit into a ministerial function. *Standard,* supra at 877-878. Accord *Smith v. Chatham County,* 264 Ga. App. 566, 570 (591 SE2d 388) (2003).

Phillips cites *Keener v. Kimble,* 170 Ga. App. 674, 675 (2) (317 SE2d 900) (1984), as support for the trial court's holding. In that case, this Court found that where it was alleged that a police officer was speeding in hot pursuit in violation of OCGA § 40-6-6 (b) (3), such allegations "raised a factual question as to whether the deputy sheriffs were engaged in the performance of a ministerial act in which they acted negligently in endangering the lives and property of others."

*Keener* is distinguishable. First, the case predates the holding by the Supreme Court in *Cameron,* supra. And, OCGA § 40-6-6 was substantially revised since the holding in *Keener v. Kimble,* particularly in regard to the issue of proximate cause. See generally OCGA § 40-6-6 (d) (2).[2]

---

[2] OCGA § 40-6-6 (d) (2) provides: "When a law enforcement officer in a law enforcement vehicle is pursuing a fleeing suspect in another vehicle and the fleeing suspect damages any property or injures or kills any person during the pursuit, the law enforcement officer's pursuit

Accordingly, we conclude that the police officer is entitled to official immunity and can be liable only if he acted with actual malice or with actual intent to cause injury. See *Cameron*, supra at 123. Although the dissent would hold otherwise and goes to great lengths to distinguish the cases upon which we rely, these cases are closely on point and are controlling in this case. The dissent has not cited to, and we do not find, any authority which would support the opposite conclusion.

2. Although the trial court acknowledged that the decision to initiate and continue the chase was discretionary, it went on to state that there was an issue of fact as to "whether Officer Hanse intentionally rammed the SUV and whether this action was willful, wanton and reckless." Wilful, wanton and reckless conduct does not equate with the actual malice necessary to defeat a claim of official immunity. See *Smith*, supra at 570.

> " 'Actual malice' requires a deliberate intention to do wrong," as distinguished from "implied malice," *Merrow v. Hawkins*, 266 Ga. 390, 391 (467 SE2d 336) (1996), which in a criminal context means reckless disregard for human life. Id. at 392 (2). Ill will alone is insufficient to establish actual malice; [Phillips] must show that [Hanse] acted with the deliberate intent to commit a wrongful act or with the deliberate intent to harm her [husband and his passengers]. *Adams v. Hazelwood*, 271 Ga. 414 (520 SE2d 896) (1999).

*Anderson v. Cobb*, 258 Ga. App. 159, 160 (2) (573 SE2d 417) (2002).

In *Williams v. Solomon*, 242 Ga. App. 807 (531 SE2d 734) (2000), this Court found Officer Solomon was entitled to official immunity where, although it was alleged in the complaint that he ran a stop sign and did not activate his blue lights when engaged in a high-speed pursuit, it was not alleged that he acted either with actual malice or intent to cause injury. In so holding, the court noted that "conduct

shall not be the proximate cause or a contributing proximate cause of the damage, injury, or death caused by the fleeing suspect unless the law enforcement officer acted with reckless disregard for proper law enforcement procedures in the officer's decision to initiate or continue the pursuit. Where such reckless disregard exists, the pursuit may be found to constitute a proximate cause of the damage, injury, or death caused by the fleeing suspect, but the existence of such reckless disregard shall not in and of itself establish causation.

(3) The provisions of this subsection shall apply only to issues of causation and duty and shall not affect the existence or absence of immunity which shall be determined as otherwise provided by law.

(4) Claims arising out of this subsection which are brought against local government entities, their officers, agents, servants, attorneys, and employees shall be subject to the procedures and limitations contained in Chapter 92 of Title 36."

exhibiting a reckless disregard for the safety of others does not equate with the actual malice necessary to defeat a claim of official immunity." Id. at 809 (1).

Here, there is nothing in the record which demonstrates any deliberate intention on the part of Officer Hanse to do a wrongful act or any intention to cause harm to Phillips. See *Smith*, supra at 570; *Williams*, supra at 809.

*Judgment reversed. Ruffin, C. J., Johnson, P. J., and Mikell, J., concur. Blackburn, P. J., Barnes and Phipps, JJ., dissent.*

PHIPPS, Judge, dissenting.

The question in this appeal is whether Fulton County Police Officer Sean Hanse was entitled to summary judgment on grounds of official immunity in this wrongful death and personal injury suit against him and others, arising from a collision that occurred when a vehicle driven by fleeing suspect Tonialo Dennis struck a car during a high-speed chase. The car was being driven by plaintiff Shamonda Phillips's husband, and their three children were passengers. Phillips's husband was killed in the collision, and the children were injured.

Under the official or qualified immunity doctrine, police officers may be personally liable for actions taken in the performance of ministerial functions, but are immune from personal liability for discretionary actions taken within the scope of their official authority and performed without wilfulness, malice, or corruption.[3]

Dennis claimed that his vehicle crashed into Phillips's car because he lost control of it after it was struck and pushed by a Fulton County police vehicle which, the evidence shows, would have been operated by Hanse. Hanse denies having made contact with Dennis's vehicle. Hanse moved for summary judgment, arguing that he is immune from suit because the acts in which he engaged were discretionary and lacked wilfulness, malice, or corruption. The trial court denied Hanse's motion, on grounds that Hanse did not have discretion to intentionally ram a fleeing vehicle and that there is an issue of fact on the question of whether Hanse did so.

"The question of whether a government official is entitled to qualified immunity is a question of law for the court to decide."[4] Where, however, there is a material issue of fact on the question of whether the government official has engaged in conduct for which there is no immunity, a jury must resolve the facts.[5]

---

[3] *Cameron v. Lang*, 274 Ga. 122, 123 (1) (549 SE2d 341) (2001).

[4] *Conley v. Dawson*, 257 Ga. App. 665, 668 (2) (572 SE2d 34) (2002) (punctuation and footnote omitted).

[5] See *Clark v. Prison Health Svcs.*, 257 Ga. App. 787, 792 (2) (572 SE2d 342) (2002) and cit.

Fulton County has a written manual setting forth policies, procedures, and practices to be followed by police officers engaged in hot-pursuit vehicular chases. One of the procedures states that "[d]eliberate physical contact between any two vehicles at any time will not be justified, except as necessitated at roadblocks and under the order pertaining thereto." Additionally, the "prohibited practices" part of the manual states that an "[o]fficer will not bump or ram a fleeing vehicle."

Hanse's entitlement to summary judgment depends upon whether he would have violated a ministerial duty if he had intentionally rammed Dennis's vehicle. In reliance on *Cameron v. Lang*,[6] *Smith v. Chatham County*,[7] and *Standard v. Hobbs*,[8] the majority answers this question in the negative, thereby concluding that Hanse was entitled to summary judgment.

*Cameron* involved two suits for damages arising from high speed chases of fleeing suspects by police. A City of Savannah police officer was a defendant in one of the suits; he was charged with recklessness by running a stop sign and failing to use his car's siren and emergency lights. A Peach County deputy sheriff was a defendant in the other suit; he was charged with recklessness in deciding to continue the high speed pursuit. Our Supreme Court held that both officers were exercising discretion in deciding to engage in the high speed pursuits, and that the Savannah officer did not breach a ministerial duty by running a stop sign without turning on his blue lights or siren.

*Standard* was a suit against a McDuffie County sheriff's deputy engaged in a high speed pursuit of a fleeing suspect. At the time, the McDuffie County Sheriff's Department had a written standard operating procedure governing high speed pursuit. It contained a directive requiring an officer to terminate a high speed pursuit upon obtaining "additional information . . . that would allow for the later apprehension of the violator."[9] The plaintiff in *Standard* argued that the McDuffie County sheriff's deputy obtained such information after being made aware that a Georgia State Patrol helicopter had been dispatched to the scene and had spotted the fleeing car. We refused to

---

(reversing grant of government official's motion for summary judgment, where trial court erroneously determined that his allegedly negligent actions were discretionary rather than ministerial (and presumptively remanding the case for jury trial on question of liability and damages)); see also *Outlaw v. Nasworthy*, 250 Ga. App. 362 (551 SE2d 785) (2001) (reversing trial court's grant of government official's motion for summary judgment on ground of qualified immunity from a 42 USC § 1983 claim and remanding case for submission of a special verdict form to jury to resolve factual conflicts).

[6] Supra at 124-125 (2).

[7] 264 Ga. App. 566, 569-570 (2) (591 SE2d 388) (2003).

[8] 263 Ga. App. 873, 875-878 (1) (589 SE2d 634) (2003).

[9] Id. at 877 (1) (punctuation omitted).

hold that, under the circumstances, a ministerial duty was thereby imposed on the deputy to discontinue the chase.

In *Smith*, Chatham County police officers were sued. In that case, the county had a general order regarding vehicle pursuits. The order stated that " 'vehicle pursuit is justified only when a Chatham County police officer has reasonable grounds to believe the offender has committed or is attempting to commit a forcible felony or when the necessity of immediate apprehension outweighs the level of danger created by the pursuit.' "[10] Whether the officers in *Standard* had reasonable grounds to believe that the driver of the vehicle they were pursuing was attempting to commit a forcible felony was arguable. We held that under the Chatham County departmental policy, the officers' decision to pursue the suspect was not so "clear, definite and certain as merely to require the execution of a relatively simple, specific duty,"[11] so that the officers were performing discretionary acts in deciding to engage in a pursuit.

I find this case distinguishable from *Cameron*, *Smith*, and *Standard*. Both the deputy sheriff and the police officer in *Cameron* were charged with recklessness, which does not abrogate official immunity. The departmental directives in *Smith* and *Standard* did not give rise to ministerial duties. The police officer in *Smith* was required to exercise judgment and discretion in deciding whether "the necessity of immediate apprehension outweigh[ed] the level of danger created by the pursuit." The sheriff's deputy in *Standard* was required to do likewise in deciding whether the state patrol helicopter's appearance on the scene would have "allow[ed] for later apprehension of the violator." Here, discretionary decisions about whether to initiate and continue the chase were made by Hanse's superior officers. Hanse, in contrast, was required to follow a simple, clear-cut directive that absolutely prohibited him from deliberately bumping or ramming a fleeing vehicle. In my opinion, the officer was therefore under a ministerial duty not to do just that. Whether he did so is a question of fact to be decided by a jury. Therefore, I respectfully dissent to the majority's reversal of the trial court's denial of the officer's motion for summary judgment.

I am authorized to state that Presiding Judge Blackburn and Judge Barnes join in this dissent.

DECIDED NOVEMBER 29, 2005 — 

*Paula A. Morgan, Rory K. Starkey, Robert D. Ware*, for appellant.

---

[10] 264 Ga. App. at 569 (2) (footnote and emphasis omitted).
[11] Id. at 570 (2) (punctuation and footnote omitted).

*Cathey & Strain, Edward E. Strain III, David A. Sleppy, Lisa J. Bucko, Matthew T. Allen*, for appellees.