**THIRD DIVISION**
**BARNES, P. J.,**
**BOGGS and BRANCH, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/

**May 30, 2014**

# In the Court of Appeals of Georgia

A14A0639. MARSHALL v. MCINTOSH COUNTY.

A14A0640. MARSHALL v. DEVERGER.

BARNES, Presiding Judge.

These companion appeals involve a challenge to the trial court's dismissal of a complaint for wrongful death on the grounds of sovereign and official immunity. Sandra S. Marshall, the surviving spouse and administratrix of the estate of her late husband, sued McIntosh County and the director of its 911 emergency telephone system, Sheila K. Deverger, in her official and individual capacities, alleging that the defendants were liable for refusing to respond to a 911 emergency telephone call. Pursuant to OCGA § 9-11-12 (b) (6), the trial court granted the defendants' respective motions to dismiss the complaint for failure to state a claim upon which relief could be granted. The trial court concluded that the plaintiff's claims against McIntosh County and Deverger in her official capacity were barred by sovereign immunity, and

that her claim against Deverger in her individual capacity was barred by official immunity. The plaintiff now appeals the dismissal of her claims.

For the reasons discussed below, we affirm the dismissal of the plaintiff's claims against McIntosh County and Deverger in her official capacity based on sovereign immunity. But at this early point in the litigation, where there has not yet been any discovery, the trial court erred in dismissing the plaintiff's claim against Deverger in her individual capacity, and we thus reverse the dismissal of that claim.

On appeal, we review de novo the trial court's grant of a motion to dismiss a complaint. *South Point Retail Partners, LLC v. North American Properties Atlanta, Ltd.*, 304 Ga. App. 419, 420 (696 SE2d 136) (2010). We construe the complaint in the light most favorable to the plaintiff, with all doubts resolved in her favor. *TechBios v. Champagne*, 301 Ga. App. 592, 593 (688 SE2d 378) (2009).

As alleged in the complaint, plaintiff's late husband, John K. Marshall, began experiencing chest pain while on Blackbeard Island in McIntosh County, Georgia, leading him to call 911 and advise the operator that he was having a heart attack. Marshall's request for aid was communicated to Deverger, who was the director of the McIntosh County 911 emergency telephone system. According to the complaint, Deverger refused to send aid to Marshall and directed McIntosh County emergency

medical technicians ("EMTs") not to respond to Marshall's request for medical service. Marshall never received medical aid from McIntosh County, and he died on Blackbeard Island later that same day.

The complaint alleged that having established a 911 emergency telephone service, McIntosh County had a duty to respond to Marshall's request for medical aid, and that his death was a foreseeable result of Deverger's refusal to send aid to him on Blackbeard Island. The complaint further alleged that Deverger's refusal to send aid to Marshall proximately caused his death and constituted willful and wanton misconduct as well as bad faith, rendering both her and McIntosh County liable for damages under OCGA § 46-5-131 (a) of the Georgia Emergency Telephone Number 9-1-1 Service Act of 1977, codified, as amended, at OCGA § 46-5-120 et seq. (the "911 Service Act").

*Case No. A14A0639*

1. The trial court dismissed the plaintiff's claim against McIntosh County based on sovereign immunity. On appeal, the plaintiff contends that the trial court erred in dismissing the claim because McIntosh County waived its sovereign immunity under OCGA § 46-5-131 (a) of the 911 Service Act by implementing and operating a 911

3

emergency telephone system and could be held liable for damages under that statutory provision. We disagree.

"Under our Constitution, Georgia counties enjoy sovereign immunity, and can be sued only if they have waived their immunity." (Citations omitted.) *Strength v. Lovett*, 311 Ga. App. 35, 38 (1) (714 SE2d 723) (2011). See Ga. Const. of 1983, Art. I, Sec. II, Par. IX (e); OCGA § 36-1-4. Sovereign immunity "can only be waived pursuant to a legislative act which specifically provides that sovereign immunity is waived and describes the extent of such waiver." (Citation and punctuation omitted.) *Bd. of Commrs. of Glynn County v. Johnson*, 311 Ga. App. 867, 870 (1) (b) (717 SE2d 272) (2011). See Ga. Const. of 1983, Art. I, Sec. II, Par. IX (e); *Woodard v. Laurens County*, 265 Ga. 404, 405 (1) (456 SE2d 581) (1995); *Gilbert v. Richardson*, 264 Ga. 744, 748 (3) (452 SE2d 476) (1994). A waiver of sovereign immunity "must be established by the party seeking to benefit from the waiver." (Citation and punctuation omitted.) *Fulton-DeKalb Hosp. Auth. v. Walker*, 216 Ga. App. 786, 788 (1) (456 SE2d 97) (1995). Hence, the burden was on the plaintiff to show that OCGA § 46-5-131 met the criteria for a statutory waiver of a county's sovereign immunity.

OCGA § 46-5-131 was enacted as part of the 911 Service Act, one of the purposes of which was

4

to establish and implement a cohesive state-wide emergency telephone number 9-1-1 system which will provide citizens with rapid, direct access to public safety agencies by dialing telephone number 9-1-1 with the objective of reducing the response time to situations requiring law enforcement, fire, medical, rescue, and other emergency services.

OCGA § 46-5-121 (a). To that end, the 911 Service Act authorizes local governments, subject to certain requirements, to operate or contract for the operation of a 911 emergency telephone system and impose a monthly 911 charge on telephone subscribers to fund the system. See OCGA §§ 46-5-127; 46-5-128; 46-5-133. In turn, OCGA § 46-5-131 sets forth certain exemptions from liability in the operation of a 911 emergency telephone system. That statute provides:

> (a) Whether participating in a state-wide emergency 9-1-1 system or an emergency 9-1-1 system serving one or more local governments, neither the state nor any local government of the state nor any emergency 9-1-1 system provider or service supplier or its employees, directors, officers, and agents, *except in cases of wanton and willful misconduct or bad faith*, shall be liable for death or injury to any person or for damage to property as a result of either developing, adopting, establishing, participating in, implementing, maintaining, or carrying out duties involved in operating the emergency 9-1-1 system or in the identification of the telephone number, address, or name associated with any person accessing an emergency 9-1-1 system.

5

(b) No local government of the State of Georgia shall be required to release, indemnify, defend, or hold harmless any emergency 9-1-1 system provider from any loss, claim, demand, suit, or other action or any liability whatsoever which arises out of subsection (a) of this Code section, unless the local government agrees or has agreed to assume such obligations.

(Emphasis supplied.)

We conclude that OCGA § 46-5-131 (a) does not meet the strict criteria for a statutory waiver of sovereign immunity, as this Court explained in *Hendon v. DeKalb County*, 203 Ga. App. 750, 756-757 (2) (c) (417 SE2d 705) (1992) (physical precedent only). Although *Hendon* is not binding precedent because one judge concurred in the judgment only, see Court of Appeals Rule 33 (a),[1] we nevertheless find its reasoning persuasive. See *Pechin v. Lowder*, 290 Ga. App. 203, 205 (659 SE2d 430) (2008) ("[P]hysical precedent may be cited as persuasive authority, just as foreign case law or learned treatises may be persuasive.") (citation and punctuation omitted). See *Amusement Sales v. State of Ga.*, 316 Ga. App. 727, 736 (2) (730 SE2d

_____

[1] Court of Appeals Rule 33 (a) provides in relevant part: "If an appeal is decided by a Division, a judgment in which all three judges fully concur is a binding precedent; provided, however, an opinion is physical precedent only with respect to any Division of the opinion for which there is a concurrence in the judgment only or a special concurrence without a statement of agreement with all that is said."

6

430) (2012) (treating physical precedent as persuasive authority). Indeed, *Hendon* was cited with approval by our Supreme Court in *Currid v. DeKalb State Court Probation Dept.*, 285 Ga. 184, 188 (674 SE2d 894) (2009), where the Supreme Court held that a similarly worded statute did not create a statutory waiver of a county's sovereign immunity. See id. at 187-188 (concluding that the Community Service Act does not create a statutory waiver of a county's sovereign immunity).[2] Accordingly, consistent with the reasoning of *Hendon*, 203 Ga. App. at 756-757 (2) (c), we conclude that the plaintiff failed to carry her burden of showing that OCGA § 46-5-131 (a) statutorily waived McIntosh County's sovereign immunity, and the trial court therefore committed no error in dismissing her claim against the County. See *Currid*, 285 Ga. at 187-188. See also *Norton v. Cobb*, 284 Ga. App. 303, 305-306 (1) (643 SE2d 803) (2007) (all three judges concurring in Division 1) (concluding that

---

[2] OCGA § 42-8-71 (d) of the Community Service Act provides: "No agency or community service officer shall be liable at law as a result of any of his acts performed while participating in a community service program. This limitation of liability does not apply to actions on the part of any agency or community service officer which constitute gross negligence, recklessness, or willful misconduct."

7

Recreational Property Act does not create a statutory waiver of a county's sovereign immunity).[3]

*Case No. A14A0640*

2. The trial court also dismissed the plaintiff's claim against Deverger in her official capacity based on sovereign immunity, and the plaintiff likewise challenges that ruling on appeal. A lawsuit against a county official in her official capacity "is considered a suit against the county, and the [official] is entitled to assert any defense or immunity that the county could assert, including sovereign immunity." *Strength*, 311 Ga. App. at 38 (1). See *Cameron v. Lang*, 274 Ga. 122, 126 (3) (549 SE2d 341) (2001). As explained supra in Division 1, the sovereign immunity of McIntosh County has not been waived in this case. Consequently, the trial court did not err in dismissing the plaintiff's claim against Deverger in her official capacity based on sovereign immunity.

---

[3] The Recreational Property Act limits the liability of "an owner of land who either directly or indirectly invites or permits without charge any person to use the property for recreational purposes," OCGA § 51-3-23, unless, among other things, the injuries resulted from "willful or malicious failure to guard or warn against a dangerous condition, use, structure, or activity." OCGA § 51-3-25 (1). See *Norton*, 284 Ga. App. at 305 (1).

8

3. Lastly, the trial court dismissed the plaintiff's claim against Deverger in her individual capacity based on official immunity. We agree with the plaintiff that the trial court erred in dismissing her claim against Deverger in her individual capacity.

(a) *Official Immunity.* Under the doctrine of official immunity, also known as qualified immunity, county officials can be held liable for the negligent performance of ministerial acts within the scope of their authority, but not for discretionary acts unless committed with actual malice. *Roper v. Greenway*, 294 Ga. 112, 113 (751 SE2d 351) (2013). "Thus, the single overriding factor is whether the specific act from which liability arises is discretionary or ministerial." (Citation and punctuation omitted.) *Howell v. Willis*, 317 Ga. App. 199, 201 (729 SE2d 643) (2012).

> A ministerial act is commonly one that is simple, absolute, and definite, arising under conditions admitted or proved to exist, and requiring merely the execution of a specific duty. A discretionary act, however, calls for the exercise of personal deliberation and judgment, which in turn entails examining the facts, reaching reasoned conclusions, and acting on them in a way not specifically directed.

(Citation omitted.) *Common Cause/Georgia v. City of Atlanta*, 279 Ga. 480, 482 (2) (614 SE2d 761) (2005).

9

The trial court concluded that Deverger's duties as director of the 911 emergency telephone system were discretionary, that the plaintiff had to prove that Deverger acted with actual malice, and that the allegations in the complaint did not support a claim of actual malice. Based on these conclusions, the trial court ruled that the plaintiff's claim against Deverger in her individual capacity was barred by official immunity.

At this early stage of the case, it was premature for the trial court to conclude that Deverger's duties were discretionary rather than ministerial, and thus to rule that the allegations in the complaint had to support a claim of actual malice. As our Supreme Court recently reiterated in *Austin v. Clark*, __ Ga. __ (Case No. S13G1590, decided on March 10, 2014),

> A motion to dismiss for failure to state a claim upon which relief may be granted should not be sustained unless (1) the allegations of the complaint disclose with certainty that the claimant would not be entitled to relief under any state of provable facts asserted in support thereof; and (2) the movant establishes that the claimant could not possibly introduce evidence within the framework of the complaint sufficient to warrant a grant of the relief sought. In deciding a motion to dismiss, all pleadings are to be construed most favorably to the party who filed them, and all doubts regarding such pleadings must be resolved in the filing party's favor.

(Citation omitted.)

In *Austin*, ___ Ga. at ___, the trial court dismissed the plaintiff's complaint based on official immunity after concluding the defendants' duties were discretionary and that the plaintiff thus had to allege actual malice. We affirmed the trial court's dismissal, but the Supreme Court reversed, emphasizing that "[t]he answer to th[e] pivotal distinction between a discretionary and a ministerial duty is highly fact-specific" and "due to the current procedural posture of th[e] case, [could not] be definitively answered." Id. at ___. The Supreme Court noted that based on the broad allegations of the complaint, there "conceivably" could be evidence of "some explicit detailed laundry list of discrete tasks" that the defendants were required to perform in carrying out their job duties that would render their duties ministerial in nature. Id. at ___. The Supreme Court further pointed out that at the motion-to-dismiss stage, "it does not matter that the existence of such a laundry list is unlikely," because whether such a list actually existed was a factual issue to be explored in discovery and potentially considered later in a motion for summary judgment. Id. at ___.

The Supreme Court's reasoning in *Austin* applies equally in the present case. Conceivably, there could be a McIntosh County departmental policy explicitly detailing a "laundry list of discrete tasks" that had to be followed in response to a 911

11

emergency telephone call to ensure that medical aid was promptly provided to callers in need. *Austin*, __ Ga. at __. And "[w]here there is an established policy requiring an official to take specified action in a specified situation, the policy creates a ministerial duty on the part of the official to perform the specified task." (Citation and punctuation omitted.) *Glass v. Gates*, 311 Ga. App. 563, 575 (2) (716 SE2d 611) (2011), aff'd, 291 Ga. 350 (729 SE2d 361) (2012). Consequently, it cannot be said that the allegations of the plaintiff's complaint disclose with certainty that Deverger's duties were discretionary in nature so as to require a showing of actual malice.[4] See *Austin*, __ Ga. at __. It follows that the trial court erred in dismissing the plaintiff's individual capacity claim against Deverger based on official immunity.

(b) *Statutory Immunity.* Deverger contends that even if the complaint should not have been dismissed on the basis of official immunity, dismissal nevertheless was appropriate on the basis of the statutory immunity afforded to county officials by OCGA § 46-5-131 (a) of the 911 Service Act. We are unpersuaded.

---

[4] For this reason, we need not decide whether the plaintiff's complaint sufficiently alleged the actual malice necessary to overcome the official immunity afforded to county officials for discretionary acts. Compare *Murphy v. Bajjani*, 282 Ga. 197, 203-204 (4) (647 SE2d 54) (2007).

As previously noted, OCGA § 46-5-131 (a) provides that a county official carrying out duties involved in operating a 911 emergency telephone system cannot be held liable "except in cases of wanton and willful misconduct or bad faith." Wanton misconduct "is that which is so reckless or so charged with indifference to the consequences as to justify the jury in finding a wantonness equivalent in spirit to actual intent," and willful misconduct "is based on an actual intention to do harm or inflict injury." (Citation and punctuation omitted.) *Dyches v. McCorkle*, 212 Ga. App. 209, 217 (2) (441 SE2d 518) (1994). "Bad faith is not simply bad judgment or negligence, but it imports a dishonest purpose or some moral obliquity, and implies conscious doing of wrong, and means breach of [a] known duty through some motive of interest or ill will." (Citation and punctuation omitted.) Id.

OCGA § 46-5-131 (a) does not require a showing of *actual* malice. To prove actual malice, a plaintiff must demonstrate that the defendant acted with "a deliberate intention to do wrong." *Murphy*, 282 Ga. at 203 (4). But proof of "wanton and willful" misconduct, which is sufficient to abrogate the immunity afforded to a county official by OCGA § 46-5-131 (a), does not equate with proof of actual malice. See *Hanse v. Phillips*, 276 Ga. App. 558, 563 (2) (623 SE2d 746) (2005), aff'd, 281 Ga. 133 (637 SE2d 11) (2006) (concluding that "[w]ilful, wanton and reckless conduct

13

does not equate with the actual malice necessary to defeat a claim of official immunity" predicated on a discretionary act). See also *Daley v. Clark*, 282 Ga. App. 235, 247 (2) (b) (638 SE2d 376) (2006); *Smith v. Little*, 234 Ga. App. 329, 330 (1) (506 SE2d 675) (1998). Rather, "wanton and willful" misconduct can encompass acts that rise only to the level of *implied* malice, that is, conduct evidencing a "reckless disregard for human life." (Citation omitted.) *Hanse*, 276 Ga. App. at 563 (2).[5]

Again, at this stage of the case, we conclude that the plaintiff sufficiently alleged a claim of wanton and willful misconduct and bad faith by Deverger to survive a motion to dismiss. "It is well established that a plaintiff is not required to plead in the complaint facts sufficient to set out each element of a cause of action so long as it puts the opposing party on reasonable notice of the issues that must be defended against." *TechBios*, 301 Ga. App. at 593. And, in light of the minimal requirements of notice pleading, "broad and conclusory" allegations are "not fatal to a plaintiff's claim at the motion-to-dismiss stage." *Renton v. Watson*, 319 Ga. App.

---

[5] If a county official's duties are discretionary, the plaintiff still would have to prove actual malice to overcome the official immunity afforded to the official by the Georgia Constitution, separate and apart from the statutory immunity afforded by OCGA § 46-5-131 (a). See Ga. Const. of 1983, Art. I, Sec. II, Para. IX (d). However, as explained supra in Division 1, it is conceivable that the plaintiff in the instant case could present evidence that Deverger's duties were ministerial in nature.

14

896, 902 (2) (739 SE2d 19) (2013). See also *Holloway v. Dougherty County School Sys.*, 157 Ga. App. 251, 254 (277 SE2d 251) (1981) ("It must be remembered that the objective of the [Civil Practice Act] is to avoid technicalities and to require only a short and plain statement of the claim that will give the defendant fair notice of what the claim is and a general indication of the type of litigation involved; the discovery process bears the burden of filling in details.").

The plaintiff's complaint alleged that upon learning of Marshall's request for medical service, Deverger refused to send aid to Marshall and directed McIntosh County EMTs not to not respond to Marshall's request. The complaint further alleged that Deverger's refusal to respond to Marshall's request for medical service "constitute[d] wanton and willful misconduct, as well as bad faith." In light of these allegations, it cannot be said that the complaint discloses with certainty that the statutory immunity afforded by OCGA § 46-5-131 (a) of the 911 Service Act would bar the plaintiff's claim against Deverger in her individual capacity. Accordingly, under the liberal pleading requirements that apply at the motion-to-dismiss stage, the plaintiff's individual capacity claim against Deverger was not subject to dismissal based on the statutory immunity provided by OCGA § 46-5-131 (a). See *Holloway*, 157 Ga. App. at 253-255 (trial court erred in dismissing claim against county school

15

officials in their individual capacities, where complaint alleged in summary fashion that their acts and omissions were "wilful and intentional").

In sum, we conclude in these companion cases that while the trial court properly dismissed the plaintiff's claims against McIntosh County and Deverger in her official capacity, the trial court erred in dismissing the claim against Deverger in her individual capacity. In reaching this conclusion, we note that the trial court has authority to manage the discovery and pretrial process in a manner that avoids unnecessary burden and expense to Deverger, who may ultimately move for summary judgment on the grounds of official and statutory immunity. See *Austin*, __ Ga. at __ (Nahmias, J., concurring specially) (discussing ways in which trial court can manage discovery and pretrial practice in cases involving claims of official immunity).

*Judgment affirmed in Case No. A14A0639; judgment affirmed in part and reversed in part in Case No. A14A0640. Boggs and Branch, JJ., concur.*