A96A1389. MIMS et al. v. CLANTON.
(475 SE2d 662)

ELDRIDGE, Judge.

This case appeared before the Court in *Mims v. Clanton*, 215 Ga. App. 665 (452 SE2d 169) (1994) and was reversed and remanded to determine whether or not Gwinnett County was self-insured so as to waive sovereign immunity as to the first $250,000 in liability which was deductible from the insurance policy coverage of $750,000 in force at the time of the personal injury resulting from the collision of a fire engine with the plaintiff.

At the trial court's direction Gwinnett County amended its response to plaintiff's interrogatories: "Please describe any self-insurance plan, investment plan, fund, bank or trust account, or other reservoir of resources of any kind or character whatsoever, established or maintained by Gwinnett County or any subdivision or agency thereof, since January 1, 1985, from or to which any funds have been designated, allocated or appropriated for payment of tort claims against the County, any subdivision or agency thereof, of any employee, agent or representative thereof acting within the course and scope of his or her employment.

"*Response*: Gwinnett County states that it did not maintain a self-insurance plan to cover claims below the $250,000 threshold amount. Moreover, Gwinnett County did not fund a liability trust or other spending account in lieu of commercial insurance for the payment of claims.

"The Board of Commissioners failed to take any affirmative action to propose, endorse, ratify, or establish a fund to pay claims prior to or on the date of the subject incident. Rather, any money expended to pay a claim was derived from the general budget of Risk Management. Accordingly, the respective sum of money appropriated to Risk Management was purely a budgetary function in which claims and legal expenses consisted of a portion of the total sum. Salaries, supplies, taxes, and other operating expenses comprised the sum total of money allocated to Risk Management. . . .

"On January 2, 1990, the Gwinnett County Board of Commissioners voted to appropriate $3,584,146 to the Risk Management Fund. The vote was not specifically to appropriate money for Risk Management, but was to adopt the 1990 Gwinnett County Budget of which Risk Management Fund was a portion.

"The following items were included in the $3,584,146 amount: permanent salaries, overtime salaries, other wages, salary increases for performance, employee group insurance, FICA, Workers' Compensation, longevity bonuses, retirement, office supplies, general operating supplies, industrial repair & maintenance, furniture/fixture repair & maintenance, data processing software, printing services, telephone, postage, professional services, insurance, dues and subscriptions, publicity and public relations, training, conference and travel, rent, miscellaneous other services, fleet, contribution to vehicle replacement, contribution to Risk Management, interest expense, office furniture/fixtures and equipment, EDP equipment.

"The vast majority of these accounts had money appropriated to them. On August 21, 1990, the Gwinnett County Board of Commissioners through their annually scheduled mid-year budget revision, revised the County's overall budget, but no additional monies were appropriated to the Risk Management Fund. . . .

"In response to the above interrogatory and in contrast to the status of risk management set forth above, on April 17, 1990 the Gwinnett County Board of Commissioners adopted the enclosed ordinance entitled 'Limited Waiver of Governmental Immunity' which provided, inter alia, a specific waiver of immunity to the extent it was not excluded by law, to an incident or occurrence involving bodily injury and property damage claims up to an amount not exceeding $25,000.

"On April 17, 1990, the Gwinnett County Board of Commissioners also adopted the enclosed ordinance entitled 'Officer and Employee Defense and Indemnification Plan' which provided, inter alia, a specific waiver of immunity to the extent it was not excluded by law, to defend and indemnify its public officials and employees.

"On August 7, 1990, the Gwinnett County Board of Commissioners adopted the enclosed ordinance entitled 'Amendments to Ordinance Entitled Officer and Employee Defense and Indemnification Plan.' "

Appellants refiled their partial motion for summary judgment on the issue of sovereign immunity as to the deductible portion of any liability. The trial court denied the motion.

1. Since the action arose on March 20, 1990, when the plaintiff was injured after the fire engine struck her vehicle, then the former constitutional provision, Art. I, Sec. II, Par. IX of the Ga. Const. of 1983, would govern and not Ga. L. 1990, p. 2435, § 1, which was approved by the electorate on November 6, 1990, and has the same designation as Art. I, Sec. II, Par. IX of the Ga. Const. of 1983. See *Curtis v. Bd. of Regents &c.*, 262 Ga. 226 (416 SE2d 510) (1992); *Brown v. Hall County*, 262 Ga. 172 (416 SE2d 90) (1992); *Donaldson v. Dept. of Transp.*, 262 Ga. 49 (414 SE2d 638) (1992); *Dozier v. Clayton County Hosp. Auth.*, 206 Ga. App. 62 (424 SE2d 632) (1992). The former constitutional provision reads in part: "Sovereign immunity extends to the state and all of its departments and agencies. . . . Also the defense of sovereign immunity is waived as to those actions for the recovery of damages for any claim against the state or any of its departments and agencies for which liability insurance protection for such claims has been provided but only to the extent of any liability insurance provided."

2. *Mims v. Clanton*, supra, 215 Ga. App. at 668, held that the defense of sovereign immunity applied to the deductible and remanded the case to determine if there existed any self-insurance and to permit the trial court to reconsider the motion to compel discovery regarding the existence of any such fund.

3. The right to the payment for legal expenses for the defense of any claim or lawsuit is a major portion of the rights of the insured under any liability coverage and may well exceed the liability limits

for the payment of any claim or judgment.

Insurers are very careful not to undertake a defense of any insured if there exists a coverage question because once the defense has assumed a case, the insurer cannot abandon the insured if there later turns out to be no coverage, absent a defense under a reservation of rights; as a consequence the insurer is quick to bring a declaratory judgment action to determine the duty to defend when there exists a coverage issue. *Argonaut Ins. Co. v. Atlantic Wood &c.*, 187 Ga. App. 471, 472 (370 SE2d 765) (1988); *Strain Poultry Farms v. American Southern Ins. Co.*, 128 Ga. App. 600, 604 (197 SE2d 498) (1973); *Hardeman v. Southern Home Ins. Co.*, 111 Ga. App. 638, 641 (3) (142 SE2d 452) (1965); *United States Cas. Co. v. Ga. Southern &c. R. Co.*, 95 Ga. App. 100, 103 (97 SE2d 185) (1957); *Ga. Cas. &c. Co. v. Turner*, 86 Ga. App. 418 (71 SE2d 773) (1952). Thus, liability insurance protection is comprised not only of the duty to indemnify but also to defend against all claims within the coverage.

4. Therefore, the plain and unambiguous meaning of the constitutional provision "extent of any liability insurance provided" is not only indemnification from any claim or judgment but also any and all expenses for investigation and defense of such claim.

5. As of January 2, 1990, Gwinnett County had in existence a Risk Management Fund of $3,584,146 for the investigation and defense of tort claims. While such fund was not used to pay claims, it constituted a self-insurance fund to satisfy part of the function of insurance coverage and was available to satisfy claims from any judgment, although that was not the purpose which the Gwinnett County Board of Commissioners intended. Any funds dedicated in whole or in part for self-insurance purposes, whether for defense or indemnification, constitutes a self-insurance fund.

6. Under the home rule provisions of the constitution, counties have very broad powers. Art. IX, Sec. II, Pars. I and III of the Ga. Const. of 1983. The only limitation on such broad spending power comes from Art. III, Sec. VI, Par. VI which prohibits gratuities. Therefore, a county has the power to create a self-insurance plan or fund; however, without action of the General Assembly a county cannot waive sovereign immunity. Art. IX, Sec. II, Par. IX; see also *Logue v. Wright*, 260 Ga. 206, 208 (2), 209 (3) (392 SE2d 235) (1990); *Tillman v. Mastin*, 216 Ga. App. 3 (453 SE2d 85) (1994); and *Pizza Hut of America v. Hood*, 198 Ga. App. 112, 113 (2) (400 SE2d 657) (1990). Under OCGA § 45-9-1 et seq., the General Assembly expressly excluded counties from creating self-insurance plans which waived sovereign immunity. While OCGA § 45-9-20 et seq. authorizes counties to buy liability insurance, it does not authorize the creation of county self-insurance funds that waive sovereign immunity by such creation. *Logue v. Wright*, supra; *Tillman v. Mastin*, supra; *Pizza Hut*

*of America v. Hood*, supra. Nowhere in such cases did the courts hold that the creation of such self-insurance funds were ultra vires but only that the creation did not waive sovereign immunity.

7. Sovereign immunity can be waived in several ways. Under Art. I, Sec. II, Par. IX, prior to November 6, 1990, it was waived by the purchase of any insurance, but after that date, it was waived only by the purchase of motor vehicle liability insurance under OCGA § 33-24-51 (b). Sovereign immunity can be waived by any statutory provision of the General Assembly under Art. IX, Sec. II, Par. IX as to counties.

8. In the case sub judice sovereign immunity has been waived by the purchase of liability insurance within the ambit of OCGA § 33-24-51 (b) as well as the former provisions of Art. I, Sec. II, Par. IX of the Ga. Const. of 1983. Clearly Gwinnett County created a self-insurance plan which came within the constitutional provision. *Logue v. Wright*, supra, is distinguished upon the facts in that there had been no waiver of sovereign immunity by statute or the constitution, while in the case sub judice sovereign immunity has been waived by the purchase of insurance. Here, the act of creating a self-insurance fund comes within the provision that "sovereign immunity is waived . . . for which liability insurance protection for such claims has been provided" (former Art. I, Sec. II, Par. IX); certainly, $3,584,146 is providing insurance. See *Litterilla v. Hosp. Auth. of Fulton County*, 262 Ga. 34 (413 SE2d 718) (1992); *Mims v. Clanton*, supra.

*Judgment affirmed. Birdsong, P. J., and Blackburn, J., concur.*

DECIDED AUGUST 15, 1996 —
RECONSIDERATION DENIED SEPTEMBER 4, 1996 —

*Chandler & Britt, Walter M. Britt, Gregory D. Jay*, for appellants.
*Harris, Morgan & Parson, Frank P. Harris, Sullivan, Hall, Booth & Smith, John E. Hall, Jr.*, for appellee.