A03A1133. SMITH et al. v. CHATHAM COUNTY et al.
(591 SE2d 388)

JOHNSON, Presiding Judge.

Roger and Loretta Smith filed a personal injury action against Chatham County and Chatham County police officers James Coleman, Andrew Osteen, and Malcolm Kendrick after the Smiths' car was struck by a suspect's pickup truck during a police chase. The trial court granted summary judgment to the County based on sovereign immunity, and to the police officers based on official immunity. The Smiths appeal. We affirm the judgment of the trial court.

The record shows that Officer Coleman was working as an off-duty police officer at a car dealership. When he arrived on the car lot at 11:00 p.m. in a Chatham County police vehicle, he noticed a pickup truck with a dealer's drive-out tag parked near a row of used cars. The truck drove off slowly, heading north on Abercorn Street. The officer then noticed a man walking between the used cars. The man crossed Abercorn Street and ran into a wooded area. The officer then watched as the pickup truck he noticed earlier slowly traveled south on Abercorn Street. The officer believed the driver of the truck was trying to pick up the man he saw running into the woods. The pickup truck made a u-turn and then began traveling slowly in the opposite direction. Based on what he saw and the fact that there had

---

been car break-ins and thefts at dealerships in the area, the officer decided to stop the truck to investigate.

The officer began following the truck, and activated his emergency lights and siren. The officer called the police dispatcher and notified him of the pursuit. The truck's driver did not stop, and the officer followed him through several intersections. Because there was traffic at one intersection, the officer was unable to follow the truck through it. Two other officers, Osteen and Kendrick, took over the pursuit at that point. They notified the police dispatcher that they were continuing the pursuit, and maintained radio contact with the dispatcher.

The pickup truck approached the intersection of Bull Street and Washington Avenue. Roger Smith had stopped at a stop sign on Washington Avenue and began to turn left onto Bull Street. The truck swerved, then collided with the Smiths' vehicle. Roger Smith suffered severe injuries to his arm, and Loretta Smith, his passenger, was also injured. The Smiths sued the officers and the County for their injuries.[1]

1. The doctrine of sovereign immunity protects governments from legal action unless they have waived their immunity from suit.[2] The immunity, at least for counties, may only be waived by a legislative act which specifically provides that sovereign immunity is waived and the extent of such waiver.[3]

The Smiths maintain that OCGA § 33-24-51 (b) is the legislative act which specifically provides that Chatham County's sovereign immunity is waived. As discussed in detail below, that statute provides that a government waives immunity to the extent it purchases liability insurance for its employees' negligent use of a motor vehicle.[4] According to the Smiths, the County has waived sovereign immunity by having liability insurance.

The County responds that OCGA § 33-24-51 does not establish liability in this case because the County has not purchased a liability insurance policy. We agree with the County and affirm the trial court's judgment on the issue of sovereign immunity.

A waiver of sovereign immunity must be established by the party seeking to benefit from the waiver.[5] Thus, the Smiths had the burden of establishing that the County waived sovereign immunity

---

[1] The Smiths also sued the driver of the truck, but that action is not at issue in this appeal.

[2] *Cameron v. Lang*, 274 Ga. 122, 123-124 (1) (549 SE2d 341) (2001).

[3] *Woodard v. Laurens County*, 265 Ga. 404, 405 (1) (456 SE2d 581) (1995); *Gilbert v. Richardson*, 264 Ga. 744, 748 (3) (452 SE2d 476) (1994).

[4] See *Woodard*, supra.

[5] See *Bd. of Regents &c. of Ga. v. Daniels*, 264 Ga. 328, 329 (446 SE2d 735) (1994).

by obtaining liability insurance protection covering the Smiths' claim.[6]

OCGA § 33-24-51 (a) provides, in relevant part, that a county is authorized in its discretion to secure and provide insurance to cover liability for damages on account of bodily injury or death to any person or for property damage or both arising by reason of ownership, maintenance, operation, or use of any motor vehicle by the county, and to pay premiums for the insurance coverage.

OCGA § 33-24-51 (b) provides, in relevant part, that whenever a county *shall purchase* insurance to provide liability coverage for the negligence of a duly authorized officer in the performance of his official duties, its governmental immunity is waived to the extent of the amount of insurance *so purchased*. Other subsections of the statute refer to limits and coverage of the insurance policy and the payment of insurance premiums.[7]

The Smiths have not shown that the County has purchased the liability insurance referred to in OCGA § 33-24-51. The County has established a method of paying for some claims out of its budget. It has a claims and judgment fund which is designated in the general budget and appropriated annually to pay for claims after conducting a case-by-case analysis to determine if the County is liable.

The County's self-insurance plan does not constitute a waiver of the County's sovereign immunity because the County has not purchased a motor vehicle liability insurance policy — a requirement under OCGA § 33-24-51 (b). There is no statute which provides that by establishing a self-insurance plan, a county waives sovereign immunity.

The cases relied upon by the Smiths do not require a contrary result. Those cases either were governed by law which predated the 1991 amendment or involved the government's purchase of a liability insurance policy.[8]

Statutes in derogation of the common law are to be strictly construed.[9] The statute at issue, which is in derogation of the common

---

[6] See id.

[7] OCGA § 33-24-51 (c), (d), (e).

[8] See, e.g., *Gilbert*, supra at 751 (5) (county waived sovereign immunity by purchasing a Georgia Interlocal Risk Management Agency coverage agreement; under GIRMA, a county pools its resources and liabilities with other member counties and jointly purchases general liability, motor vehicle liability, or property damage insurance); *Litterilla v. Hosp. Auth. of Fulton County*, 262 Ga. 34 (413 SE2d 718) (1992) (applied pre-1991 law in case involving *purchase* of liability policy); *Mims v. Clanton*, 222 Ga. App. 657, 659 (1), 661 (8) (475 SE2d 662) (1996) (immunity waived based on applicable 1983 constitution, which provided waiver for claims for which liability insurance protection had been *provided*; court also noted, in dicta, waiver by *purchase* of insurance pursuant to OCGA § 33-24-51 (b)).

[9] See *Heard v. Neighbor Newspapers*, 259 Ga. 458, 459 (5) (b) (383 SE2d 553) (1989).

law,[10] provides for waiver only where an insurance policy is *purchased*. Given the state of the law at the time of the collision, the County was entitled to sovereign immunity.[11] The trial court did not err in granting summary judgment to the County on that basis.

2. The Smiths contend that the police officers were not entitled to official immunity because they were performing a ministerial duty in initiating and continuing the police chase. They further argue that even if the officers' acts were discretionary, the officers are not entitled to official immunity because the acts were done with malice. We are not persuaded by these arguments.

Under Georgia law, a public officer may be personally liable only for ministerial acts negligently performed or acts performed with malice or an intent to injure.[12] A ministerial act is commonly one that is simple, absolute, and definite, arising under conditions admitted or proved to exist, and requiring merely the execution of a specific duty.[13] A discretionary act calls for the exercise of personal deliberation and judgment, which in turn entails examining the facts, reaching reasoned conclusions, and acting on them in a way not specifically directed.[14] Procedures or instructions adequate to cause an act to become merely ministerial must be so clear, definite, and certain as merely to require the execution of a relatively simple, specific duty.[15]

In this case, the County police department's general order regarding vehicle pursuits states that "vehicle pursuit is justified *only* when a Chatham County police officer has reasonable grounds to believe the offender has committed or is attempting to commit a forcible felony or when the necessity of immediate apprehension outweighs the level of danger created by the pursuit."[16] The Smiths argue that the pursuit was not justified in that the officers lacked the grounds specified by the policy.

Our courts have consistently held that a police officer is exercising his discretion when he decides to engage in a high speed pursuit

---

[10] See id. at 459 (5) (a).

[11] We note that in 2002 the General Assembly passed an amendment to OCGA § 33-24-51 (b) to provide that counties waive sovereign immunity for the negligent use of a motor vehicle under OCGA § 36-92-2, effective January 1, 2005, and to authorize counties to pay for claims, settlements, and judgments through self-insurance plans. Contrary to the current law, the new section specifically authorizes counties to provide for payment of claims through self-insurance. See OCGA § 36-92-4 (a).

[12] *Cameron*, supra at 123 (1).

[13] *Clark v. Prison Health Svcs.*, 257 Ga. App. 787, 792 (2) (572 SE2d 342) (2002).

[14] Id.

[15] Id.

[16] (Emphasis in original.)

of a suspect.[17] The fact that the County policy includes some specific rules governing pursuits, such as that an officer must notify and obtain the approval of the watch commander immediately upon initiating a pursuit, does not require a finding that the officers' acts were ministerial in nature.

Contrary to the Smiths' position, the written policy specifically provides that "[t]he decision to begin a vehicle pursuit . . . rests primarily, if not solely, with the individual police officer(s) involved"; and that "police officers must exercise sound judgment and carefully consider the seriousness of the offense, the possible consequences, and the safety of citizens." The policy then sets forth various factors for the officer to consider, and implores the officer to balance the pursuit's danger to the public against allowing the suspect to escape. Therefore, an officer's decision to pursue a suspect under this policy is not so "clear, definite and certain as merely to require the execution of a relatively simple, specific duty."[18] Inasmuch as the decision to engage in a pursuit clearly requires more than mere execution of a relatively simple, specific duty, the officers were performing discretionary acts.[19]

The police officers are therefore only liable if they acted with actual malice or with actual intent to cause injury.[20] In the context of official immunity, actual malice means a deliberate intention to do a wrongful act.[21] Although the Smiths urge that the officers acted with a conscious or reckless disregard for the safety of others, conduct exhibiting a reckless disregard for the safety of others does not equate with the actual malice necessary to defeat a claim of official immunity.[22] Further, the record does not demonstrate a deliberate intention to do a wrongful act. The trial court did not err in granting summary judgment to the officers based on official immunity.

*Judgment affirmed. Eldridge and Mikell, JJ., concur.*

DECIDED NOVEMBER 17, 2003 —
RECONSIDERATION DENIED DECEMBER 5, 2003 — ■

---

[17] See *Williams v. Solomon*, 242 Ga. App. 807, 808-809 (1) (531 SE2d 734) (2000); *Cameron*, supra at 125 (2).

[18] *Clark*, supra; *Cameron*, supra at 123 (1) (official immunity is particularly important in the context of a high speed pursuit where officers must make a quick decision on whether to initiate or continue the pursuit and the type of risks to take).

[19] See generally *Gilbert*, supra at 753 (6); *Williams*, supra.

[20] See *Williams*, supra.

[21] *Adams v. Hazelwood*, 271 Ga. 414-415 (2) (520 SE2d 896) (1999).

[22] See id.; *Merrow v. Hawkins*, 266 Ga. 390, 392 (2) (467 SE2d 336) (1996).

*Stokes, Lazarus & Carmichael, William K. Carmichael, Rachel Humphrey*, for appellants.
*Emily E. Garrard, R. Jonathan Hart*, for appellees.