**FOURTH DIVISION**
**DOYLE, P. J.,**
**ANDREWS, P. J., and BOGGS, J.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)**
**http://www.gaappeals.us/rules/**

**March 12, 2013**

# In the Court of Appeals of Georgia

A12A2083. GWINNETT COUNTY v. SARGENT et al.

BOGGS, Judge.

Gwinnett County ("the County") appeals following a $2 million jury verdict in favor of Faustina Sargent, individually, and as administrator of the estate of Willie Allen Sargent, Jr. ("the appellees") in this wrongful death action. The County contends that the trial court erred in ruling that the waiver of its sovereign immunity was not limited to $100,000, and that it also erred in granting the appellees' motion in limine to exclude any evidence of the deceased's blood-alcohol level. We agree that the trial court erred in both respects, and we therefore reverse.

On December 15, 2006, around midnight, a Gwinnett County police officer was traveling on Stone Mountain Highway with no siren or emergency lights when he struck a vehicle driven by Willie Sargent as Sargent turned left in front of him from

the turn lane. Sargent died at the scene. It is undisputed that the officer was driving in violation of the posted speed limit, 79 miles-per-hour in a 45 mile-per-hour speed zone. He was responding to a call for back-up for another officer investigating a suspicious person, but violated police department policy by speeding in response to the call, which was considered "non-emergent." Also in violation of police department policy, the officer was driving in excess of the speed limit without using his siren and emergency lights.

The appellees filed suit against the County for the wrongful death of Sargent. The County denied liability and asserted that it was entitled to sovereign immunity, that the decedent was negligent, and that he assumed the risk because of his voluntary intoxication.

The County subsequently moved for partial summary judgment "to limit the amount of monetary damages that may be awarded to Plaintiff" to the statutory maximum waiver of sovereign immunity of $100,000. Following the argument of counsel, the trial court denied the County's motion.

Prior to trial, the appellees moved in limine to exclude any evidence that the decedent had a blood-alcohol level of .192 at his death. The trial court held a hearing on the matter, and granted the appellees' motion, finding that any probative value

2

from the admission of the evidence was outweighed by the danger of undue prejudice. The court nevertheless ruled that "[t]he issues of whether the decedent was negligent in turning across three lanes of traffic at night and whether this [o]fficer could have been seen [ ] [the decedent] are still issues for trial."

After a three-day jury trial, the jury found in favor of the appellees in the amount of $2,000,000. The jury found further that the decedent was "negligent five percent." The County immediately moved to have the jury's verdict reduced to $100,000 pursuant to OCGA § 36-92-2 (a) (1) (statutory waiver of sovereign immunity). The trial court denied the motion and entered a judgment in favor of the appellees in the amount of $1,900,000, deducting $100,000 based upon the jury's finding that the deceased was five percent negligent.

1. The County argues that the trial court erred in granting the appellees' motion in limine to exclude evidence that the deceased's blood-alcohol level was .192. "We review a trial court's ruling on a motion in limine for abuse of discretion. A motion in limine is properly granted when there is no circumstance under which the evidence under scrutiny is likely to be admissible at trial." (Citation and footnote omitted.) *Hankla v. Jackson*, 305 Ga. App. 391, 391 (1) (699 SE2d 610) (2010).

A forensic toxicologist testified at the hearing on the motion in limine that the deceased's blood-alcohol level was .192 at the time of his death. She opined that this would affect an individual's ability to perceive and react. An investigator with the Gwinnett County Police Department Accident Investigation Unit also testified at the hearing, and the trial court viewed a video recording of the few seconds before impact recorded by a nearby business. The investigator testified that based upon his accident reconstruction and data recorded by the officer's vehicle, five seconds before impact, the officer was traveling at 79 miles-per-hour and was 579 feet, or about one-tenth of a mile, away from the deceased's vehicle. He explained further that the deceased's sight distance was 1159 feet and that the deceased had 5 seconds to see the officer "before he committed to making the turn." The investigator determined that there were three contributing factors to the accident:

> You are going to have [the officer's] speed, which, obviously, increased the severity of the accident. You're going to have [the decedent] failing to yield while turning left. And you're also going to have [the decedent's] blood[-]alcohol level, which, .192, I've pulled over people before at a .192, even less than that, and most people exhibit . . . problems in judgment and perception and those types of manifestations.

We have held that "the question of whether a motorist's consumption of alcohol impaired his driving capabilities and entered into the proximate cause of the collision is best left for the jury's resolution." (Citation and punctuation omitted.) *Schwartz v. Brancheau*, 306 Ga. App. 463, 467 (2) (702 SE2d 737) (2010). And "[u]nless the potential for prejudice in the admission of evidence substantially outweighs its probative value, the Georgia rule favors the admission of any relevant evidence, no matter how slight its probative value. Evidence of doubtful relevancy or competency should be admitted and its weight left to the jurors." (Citations and punctuation omitted.) Id.

In *Schwartz*, we held that evidence that the driver's breath smelled of alcohol had a logical connection to the issue of whether he was intoxicated, and that the trial court did not abuse its discretion is permitting the evidence where it had some relation to his driving capability before the collision. Id. Here, much stronger evidence of intoxication was presented, a blood-alcohol level of .192, more than twice the legal limit. See OCGA § 40-6-391 (a) (5) (0.08 grams).

*Finney v. Machiz*, 218 Ga. App. 771 (463 SE2d 60) (1995), cited by the appellees, is distinguishable. In *Finney*, a vehicle in which the plaintiff was a passenger swerved over the centerline of the road striking a van driven by the

5

defendant. Id. The evidence showed that the defendant was under the influence of alcohol and cocaine. Id. We held that the alleged negligence of the defendant in driving under the influence played "no causative role in the collision" as a matter of law, and that the sole proximate cause was the vehicle in which the plaintiff was a passenger crossing the center line and striking the defendant's vehicle. Id. at 773. In contrast to *Finney*, however, the jury here was charged with deciding whether the officer's action of speeding at night without a siren or emergency lights, or the decedent's action of turning left in front of the officer, or a combination of both, was the proximate cause of the accident.

Under these particular circumstances, the issue of whether the decedent's blood-alcohol level factored into the proximate cause of the collision should have been presented for the jury to resolve. See *Schwartz*, supra, 306 Ga. App. at 467-468 (2). The evidence showed that the decedent made a left turn from the turn lane across three lanes of traffic into the path of the speeding officer. Evidence that his blood-alcohol level was more than twice the legal limit, and that such a blood-alcohol level would affect a person's perception and reaction time was relevant to the jury's consideration of whether the decedent was negligent in turning left in front of the officer and therefore failed to yield the right of way. Moreover, the jury did in fact

determine that the decedent was "five percent negligent," presumably for the failure to yield. The trial court therefore abused its discretion in excluding evidence of the decedent's blood-alcohol level.

2. The County also contends that the trial court erred in allowing a judgment in excess of the statutory maximum waiver of its sovereign immunity. "The sovereign immunity of the state and its departments and agencies can only be waived by an Act of the General Assembly which specifically provides that sovereign immunity is thereby waived and the extent of such waiver." *Currid v. DeKalb State Court Probation Dept.*, 285 Ga. 184, 186 (674 SE2d 894) (2009). And "[a] waiver of sovereign immunity must be established by the party seeking to benefit from the waiver." (Footnote, citation and punctuation omitted.) *Smith v. Chatham County*, 264 Ga. App. 566, 567 (1) (591 SE2d 388) (2003).

In 2002, the Georgia legislature enacted OCGA § 36-92-1 et seq., an Act titled "Waiver of Immunity for Motor Vehicle Claims." It applies "to all claims and causes of actions arising out of events occurring on or after January 1, 2005." OCGA § 36-92-5. The maximum waiver amount varies according to the date of the incident. See

generally OCGA § 36-92-2.[1] The accident here occurred on December 16, 2006; therefore, as provided in OCGA § 36-92-2 (a) (1):

> The sovereign immunity of local government entities for a loss arising out of claims for the negligent use of a covered motor vehicle is waived up to the following limits: . . . $100,000.00 because of bodily injury or death of any one person in any one occurrence, . . . for incidents occurring on or after January 1, 2005, and until December 31, 2006[.]

Section (d) provides three options by which the waiver limits in Section (a) can be increased:

> The waiver provided by this chapter shall be increased to the extent that:
>
> (1) The governing body of the local governmental entity by resolution or ordinance voluntarily adopts a higher waiver;
>
> (2) The local government entity becomes a member of an interlocal risk management agency created pursuant to Chapter 85 of this title to the extent that coverage obtained exceeds the amount of the waiver set forth in this Code section; or

---

[1]The waiver is $100,000 for incidents occurring on or after January 1, 2005, and until December 31, 2006; $250,000 for incidents occurring on or after January 1, 2007, and until December 31, 2007; and $500,000 for incidents occurring on or after January 1, 2008. OCGA § 36-92-2 (a) (1) - (3).

(3) The local government entity purchases commercial liability insurance in an amount in excess of the waiver set forth in this Code section.

The parties agree that the County is not a member of an interlocal risk management agency and did not purchase commercial liability insurance. Rather, the disagreement here is whether the County, by resolution or ordinance, voluntarily adopted a higher waiver pursuant to Section (d) (1).

The County argues that it did not adopt a higher waiver by resolution or ordinance and that therefore the maximum amount of its waiver is $100,000 pursuant to OCGA § 36-92-2 (a) (1). The County presented the affidavit of its Chairman of the Board of Commissioners who averred that the County did not "[i]n 2006 or in subsequent years" voluntarily by resolution or ordinance adopt a waiver of sovereign immunity above the statutory limits. The appellees argue however, that because the County, beginning in 2004, adopted budgets by resolution that appropriated sums to an Automobile Liability Fund and a Risk Management Fund (generally referred to as "Funds"), the County voluntarily adopted a self-insurance plan and waived its immunity to the extent of the full cash balances of those Funds. They contend that

OCGA § 36-92-2 (a) and (d) must be considered in pari materia with OCGA § 36-92-4 (a) and (e). OCGA § 36-92-4 (a) provides:

> Local government entities *may provide for the payment of claims*, settlements and judgments, and their associated costs through any method including, but not limited to, self-insurance, use of a fund within the local government's budget for the payment of claims, the purchase of liability insurance, participation in an interlocal risk management agency organized pursuant to Chapter 85 of Title 36, or a combination thereof.

(Emphasis supplied.) And Section (e) provides in relevant part:

> Where policies of insurance or contracts of indemnity have not been purchased or entered into by a local government entity for the purposes of paying claims and judgments under this chapter, the fiscal year aggregate liability of any local government entity under this chapter shall not exceed any self-insurance or other reserve or fund established to pay claims arising out of this chapter.[2]

But while OCGA § 36-92-4 (a) provides several options for a County to provide for the *payment* of claims (including the use of self-insurance or Funds created within the

---

[2]This subsection anticipates that a local government may have multiple claims in a fiscal year, the total of which cannot exceed the funds set aside to pay those claims.

County's budget), only OCGA § 36-92-2 (d) governs the *methods* by which a County may *increase its waiver*.

It is a well-settled rule that "[a]s long as the (statutory) language is clear and does not lead to an unreasonable or absurd result, 'it is the sole evidence of the ultimate legislative intent.'" (Citations and punctuation omitted.) *Lumpkin County v. Georgia Insurers Insolvency Pool*, 292 Ga. 76, 78 (2) (734 SE2d 880) (2012). OCGA § 36-92-2 (d) (1) provides that a waiver shall be increased to the extent that a County "by resolution or ordinance adopts a higher waiver." This language anticipates an affirmative act on the part of a County to explicitly adopt a higher waiver. The appellees point to no affirmative act of adopting a waiver by the County but argue that the Automobile Liability and Risk Management Funds created by the County *impliedly* increased its statutory waiver. But implied waivers are not favored. See *Georgia Dept. of Corrections v. James*, 312 Ga. App. 190, 194 (1) (718 SE2d 55) (2011). And statutes providing for a waiver of sovereign immunity are in derogation of the common law and are strictly construed *against* a finding of waiver. *Gish v. Thomas*, 302 Ga. App. 854, 860 (2) (691 SE2d 900) (2010). Had the legislature intended to allow a waiver to be increased simply by virtue of the existence of a County's self-insurance or Funds created by a County to pay liability claims, it could

11

have done so explicitly. See, e. g., *Gates v. Glass*, 291 Ga. 350, 353 (729 SE2d 361) (2012) ("If the legislature intended to do otherwise, i.e., to apply a narrow definition of 'motor vehicle' to situations in which local governments purchased automobile liability insurance coverage for amounts over and above the prescribed sovereign immunity limits, 'it would have done so explicitly.'"[Cit.])

The appellees cite this court's decisions in *Mims v. Clanton*, 215 Ga. App. 665 (452 SE2d 169) (1994) (physical precedent only) and *Mims v. Clanton*, 222 Ga. App. 657 (475 SE2d 662) (1996) to support their argument that the County has waived its sovereign immunity to the extent of its self-insurance. But those cases are distinguishable and were decided prior to the legislature's enactment of OCGA § 36-92-1 et seq. While those decisions were consistent with the then-applicable law governing waiver of sovereign immunity, they cannot be relied upon to arrive at the conclusion urged here by the appellees. The legislature, through the enactment of OCGA § 36-92-1 et seq., has since declared specific limits for the waiver of sovereign immunity arising out of claims for the County's negligent use of its motor vehicles, and has provided three specific methods by which the County may increase that waiver. The appellees, as the parties seeking the benefit of the waiver, failed to meet their burden of establishing that the County increased its waiver. The County's

waiver of sovereign immunity was therefore limited to the statutory maximum of $100,000 as provided in OCGA § 36-92-2 (a) (1). The trial court erred in ruling otherwise.

*Judgment reversed. Doyle, P. J. and Andrews, P. J., concur*.