**FOURTH DIVISION**
**MCFADDEN, P. J.,**
**WATKINS and PADGETT, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules

**June 24, 2026**

# In the Court of Appeals of Georgia

A26A0423. PARRIS v. GOOCH et al.

A26A0424. ONSITE COMMUNICATION SERVICES, LLC v. GOOCH et al.

A26A0425. AMCO INSURANCE COMPANY v. GOOCH et al.

MCFADDEN, Presiding Judge.

This case arises out of a motor vehicle collision. The defendant driver, Jimmy Parris, his employer, Onsite Communication Services, LLC, and Onsite's insurer, AMCO Insurance Company, each moved for summary judgment. The trial court denied those motions.

We conclude that there is enough evidence to create a genuine issue of material fact as to whether Parris was impaired at the time of the collision. There is also sufficient evidence to create a genuine issue of material fact as to whether Onsite had

actual or constructive knowledge of Parris's drug use and his multiple speeding tickets while driving Onsite trucks and yet took no action and continued to allow him to drive its vehicles. That evidence is sufficient to sustain an award of compensatory and punitive damages and of attorney fees under OCGA § 13-6-11.

At the time of the collision, Georgia had adopted the Federal Motor Carrier Safety Regulations ("FMCSR") as its own safety regulations applicable to intrastate commerce. We hold that the complaint encompasses Georgia's adoption of those federal regulations.

OCGA § 40-2-140 (d) (4) (2021) authorizes a direct action against a motor carrier's insurer. We hold that Onsite is a motor carrier under that statute.

So we affirm.

1. *Facts and procedural posture*

Tammy Gooch and Jeffery Gooch were involved in a head-on motor vehicle collision with Parris, who was driving a truck owned by his employer Onsite. It is undisputed that Parris was in the course and scope of his employment at the time of the collision and that the day after the collision, per Onsite's company policy, Parris submitted to a drug test which was positive for methamphetamine.

The Gooches filed a complaint against Parris, Onsite, and AMCO.[1] The complaint alleged that the Onsite truck driven by Parris crossed out of its lane of travel and into the oncoming lane of traffic; that the truck struck a vehicle traveling directly in front of the Gooches; and that the Onsite vehicle then collided with the Gooches' vehicle at a high rate of speed, thereby causing disabling damage to both vehicles and personal injuries to the Gooches. The complaint asserted claims for negligence and negligence per se against Parris, with the negligence per se claims premised in part on alleged violations of the FMCSR. The complaint set forth claims for vicarious liability and direct negligence against Onsite, including negligent supervision, training, and retention. The complaint further claimed that AMCO was liable as Onsite's insurer. The Gooches sought compensatory damages as well as punitive damages and attorney fees under OCGA § 13-6-11.

The defendants filed separate motions for summary judgment. Parris moved for partial summary judgment on the Gooches' claims of negligence per se for FMCSR violations, punitive damages, and attorney fees. Parris conceded in his motion that it

---

[1] The complaint also named Centerline Communications, LLC of Delaware as another defendant. But pursuant to a consent motion of the Gooches and Centerline, the trial court dismissed Centerline from the case without prejudice.

appeared he was negligent in causing the collision, but he argued that there was no evidence to support allegations that he was under the influence of drugs, including methamphetamine, at the time of the collision. He also adopted Onsite's argument in its summary judgment motion that the FMCSR did not apply to him because he drove solely within the state of Georgia and was not an interstate driver.

Onsite moved for partial summary judgment on the claims of negligence per se for FMCSR violations, direct negligence, punitive damages, and attorney fees. Onsite conceded in its motion that it is vicariously liable for Parris' breach of the applicable duty of care and damages proximately caused by the collision, but it argued that there was no evidence that Parris was under the influence of methamphetamine at the time of the accident and that the FMCSR did not apply.

AMCO moved for summary judgment on all claims, arguing that Georgia's direct action statutes, pursuant to which AMCO was added as a party defendant, do not apply because its insured, Onsite, is not a "motor carrier" as defined by those statutes.

In a single order, the trial court summarily denied all three defense motions for summary judgment, but issued a certificate of immediate review. Parris and Onsite

filed applications for interlocutory review, which this court granted, and these appeals followed. In Case No. A26A0423, Parris appeals; in Case No. A26A0424, Onsite appeals; and in Case No. A26A0425, AMCO cross-appeals.

*Case No. A26A0423*

2. *Impairment at time of collision*

Parris contends that the trial court erred in denying his motion for summary judgment because there was no genuine issue of material fact as to whether he was impaired at the time of the collision. We disagree.

"Summary judgment is proper only when no issue of material fact exists and the moving party is entitled to judgment as a matter of law." *Rebel Auction Co. v. Citizens Bank*, 343 Ga. App. 81, 86 (2) (805 SE2d 913) (2017) (citation and punctuation omitted). See OCGA § 9-11-56 (c). "A defendant may [prevail on a motion for summary judgment] by either presenting evidence negating an essential element of the plaintiff's claims or establishing from the record an absence of evidence to support such claims." *Cowart v. Widener*, 287 Ga. 622, 623 (1) (a) (697 SE2d 779) (2010) (citations and punctuation omitted). "Where a defendant moving for summary

judgment discharges this burden, the nonmoving party cannot rest on its pleadings, but rather must point to specific evidence giving rise to a triable issue." Id.

In support of his motion for summary judgment, Parris cites the following evidence as showing that he was not impaired at the time of the collision. A co-worker who was in the Onsite vehicle with Parris at the time of the collision testified that he did not notice abnormal behavior from Parris, who was driving normally and safely. A state trooper who spoke to Parris at the scene of the collision testified that Parris did not show signs of impairment, did not exhibit symptoms associated with methamphetamine intoxication, and was not cited for driving under the influence of drugs. And an expert opined in a report that the methamphetamine present in Parris' body had been metabolized so that he was not impaired at the time of the collision.

In response, the Gooches have not rested on their pleadings and instead have pointed to the following evidence as giving rise to a triable issue. Parris has admitted that he is a long-time, habitual methamphetamine user, with a prior arrest for possession of methamphetamine while employed at Onsite. He deposed that he smokes methamphetamine up to three times per week. He admitted using methamphetamine before the collision, but claimed that he last smoked the drug two

days before the collision. Parris has conceded that he caused the collision when his vehicle crossed the centerline of the roadway and veered into oncoming traffic, and he has offered no explanation for such erratic driving. The day after the collision, he tested positive for methamphetamine, showing that the drug was present in his body at the time of the collision. He deposed that he knew he would fail the drug test and that he told the CEO of Onsite before taking it that he would fail.

The Gooches also note that the opinion of Parris' expert alone would not authorize a grant of summary judgment. See *Gryder v. Conley*, 352 Ga. App. 891, 895 (2) (836 SE2d 120)(2019) ("when the evidence on a dispositive issue consists of opinion evidence, such evidence alone can never sustain an award of summary judgment, although it can be sufficient to preclude an award of summary judgment") (citation and punctuation omitted). Indeed, the other evidence cited by Parris also rests on opinion testimony concerning his impairment, and for such evidence a "jury must make the factual determination whether to accept the opinion evidence . . . in whole or in part and what weight and credibility to give it." *Young v. Faulkner*, 251 Ga. App. 847 (555 SE2d 221) (2001) (trial court erred in granting summary judgment because weight and credibility of opinion evidence were matters for the jury).

"We use a de novo standard of review on appeal from a grant or denial of summary judgment, and view the evidence, and all reasonable inferences drawn therefrom, in the light most favorable to the non-movant." *State of Ga. v. Fed. Defender Program*, ____ Ga. ____ (3) (Case No. S26A0364, decided June 2, 2026). So viewed, the evidence cited by the Gooches — Parris' admitted habitual use of methamphetamine before the collision, his unexplained traffic violation of crossing the road's centerline and veering into oncoming traffic, and his positive drug test showing that methamphetamine was present in his body at the time of the collision — was sufficient to create a genuine issue of material fact as to whether Parris was impaired at the time of the collision. See *Wright v. State*, 304 Ga. App. 651, 652-653 (1) (697 SE2d 296) (2010) (evidence that defendant admitted to taking drugs, that lab tests confirmed the presence of drugs in his system, and that his vehicle crossed the centerline and caused a collision was sufficient to establish appellant's impairment); *Yglesia v. State*, 288 Ga. App. 217, 218 (653 SE2d 823) (2007) ("the commission of a traffic violation can constitute evidence that a driver is impaired"). Indeed, "the question of whether a motorist's consumption of alcohol [or drugs] impaired his driving capabilities and entered into the proximate cause of the collision is best left for

the jury's resolution." *Barrett v. Burnette*, 348 Ga. App. 838, 840 (824 SE2d 701) (2019) (citation and punctuation omitted) (physical precedent). See also *Gwinnett County v. Sargent*, 321 Ga. App. 191, 193 (1) (738 SE2d 716) (2013) (same); *Schwartz v. Brancheau*, 306 Ga. App. 463, 467 (2) (702 SE2d 737) (2010) ("trial court has discretion to admit even minimal evidence of alcohol [or drug] consumption"). Because the evidence creates a genuine issue of material fact as to whether Parris was impaired at the time of the collision, the trial court did not err in denying his motion for summary judgment on this ground.

3. *Negligence per se*

Parris contends that the trial court erred in denying summary judgment on the Gooches' negligence per se claims premised on alleged violations of the FMCSR because those regulations applied only to interstate commerce and he worked entirely intrastate. But at the time of the collision, Georgia had adopted the FMCSR as its own safety regulations applicable to intrastate commerce, expressly providing that "[a]ll references to 'interstate' commerce in the Federal Motor Carrier Safety Regulations adopted hereby shall be interpreted . . . to mean 'intrastate' commerce in Georgia." Ga. Comp. R. & Regs. 515-16-4-.01 (2021). Parris has not addressed this application

of the adopted rules to intrastate commerce in Georgia, has pointed to no evidence showing that such adopted rules did not apply to him, and thus has failed to carry his burden as a defendant seeking summary judgment to show that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law on this basis.

*Case No. A26A0424*

4. *Negligence claims*

Onsite contends that the trial court erred in denying summary judgment on the direct negligence claims, including negligent supervision, training and retention, because there is no evidence that Parris' drug use proximately caused the collision. But as discussed above, there was sufficient evidence creating a genuine issue of material fact as to whether Parris was under the influence of methamphetamine at the time of the collision.

Onsite also claims that there is no evidence that it had knowledge of Parris' drug use. But the Gooches have pointed to evidence showing that approximately three years before the collision in this case, Kristin House, who had been in a relationship with Parris and had two children with him, knew that Parris was using

10

methamphetamine and she informed his supervisors at Onsite that he was using drugs. The supervisors discussed the information, but did not have Parris submit to drug testing or take any other action. Approximately a year before the crash, House filed a court motion averring that Parris had drug paraphernalia in his home and was using drugs again. Parris' attorney then filed affidavits in that case in support of Parris, including affidavits of his Onsite supervisors and another Onsite employee.

The Gooches also point to the evidence showing that Parris smoked methamphetamine up to three times per week while working at Onsite; that he deposed that he was drug-tested at Onsite three to five times per year; that the expert witness reported that a positive test could result up to a week following chronic use; and yet Onsite claimed Parris had passed all drug tests, but failed to produce any such test results. The Gooches further cite evidence that Parris had four or five speeding tickets while driving Onsite trucks, that he reported those tickets to Onsite, and that he was not reprimanded or further trained as a result of those tickets.

The Gooches' direct negligence claims against Onsite "for negligent training, supervision, and retention each require a showing that [Onsite] had actual or constructive knowledge of the danger that resulted in [the alleged] injury, namely,

[Parris' drug use]." *Doe v. St. Joseph's Catholic Church*, 313 Ga. 558, 566 (2) (870 SE2d 365) (2022).

> An employer has a duty to exercise ordinary care not to hire or retain an employee the employer knew or should have known posed a risk of harm to others where it is reasonably foreseeable that the employee's tendencies could cause the type of harm sustained by the plaintiff. However, it is not necessary that the employer should have contemplated or even [been] able to anticipate the particular consequences which ensued, or the precise injuries sustained by the plaintiff. In order to defeat summary judgment on a claim for negligent training and supervision, a plaintiff must produce some evidence of incidents similar to the behavior that was the cause of the injury at issue.

*Doe I v. YWCA of Greater Atlanta*, 321 Ga. App. 403, 408 (2) (740 SE2d 453) (2013) (citation and punctuation omitted).

In this case, the evidence cited by the Gooches was sufficient to create a genuine issue of material fact as to whether Onsite had actual or constructive knowledge of Parris' drug use and his multiple speeding tickets while driving Onsite trucks and yet took no action and continued to allow him to drive its vehicles. Under the circumstances, we find that the trial court did not err in denying summary judgment on this basis.

5. *Negligence per se claims*

12

Onsite argues, like Parris, that the trial court erred in denying summary judgment on the negligence per se claims based on violations of the FMCSR because those rules did not apply to Parris as an intrastate driver. But as discussed above, Georgia adopted the FMCSR as its own safety rules applicable to intrastate commerce. See Ga. Comp. R. & Regs. 515-16-4-.01 (2021). Onsite points to no evidence showing, and does not argue, that Parris was not subject to such intrastate regulation under the rules as adopted. Rather, Onsite claims that the Gooches' reliance on Georgia's adoption of the FMCSR pursuant to Ga. Comp. R. & Regs. 515-16-4-.01 (2021) fails because they did not cite it in their complaint and instead cited only the FMCSR.

> [But] we are aware of no authority for the proposition that such citations are required and the appellant has cited no such authority. On the contrary, the Civil Practice Act requires only a short and plain statement of the plaintiff's claim. There is no magic in nomenclature, and we judge pleadings . . . by their function and substance[.]

*Daily Underwriters of America v. Williams*, 354 Ga. App. 551, 556-557 (2) (b) (i) (841 SE2d 135) (2020) (citations and punctuation omitted) (physical precedent). Here, the function and substance of the complaint "clearly put [Onsite] on notice of the

[negligence per se] actions against it[.]" Id. at 557 (2) (b) (i). We find no reversible error in the denial of summary judgment.

6. *Punitive damages*

"Punitive damages may be awarded only in such tort actions in which it is proven by clear and convincing evidence that the defendant's actions showed willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences." OCGA § 51-12-5.1 (b).

> Mere negligence, although gross, will not alone authorize the recovery of punitive damages. There must be circumstances of aggravation or outrage. In accordance with these principles, this [c]ourt has allowed a plaintiff alleging negligent hiring and/or retention to proceed with a punitive damages claim against the employer only when some facts support a conclusion that the employer acted with such an entire want of care as to raise a presumption of conscious indifference to the consequences. A plaintiff can shoulder this burden of proof only by showing that an employer had actual knowledge of numerous and serious violations on its driver's record, or, at the very least, when the employer has flouted a legal duty to check a record showing such violations.

*Western Indus. v. Poole*, 280 Ga. App. 378, 380 (1) (634 SE2d 118) (2006) (citations and punctuation omitted). Here, the Gooches have pointed to evidence creating genuine issues of material fact as to whether Onsite actually knew that Parris was using illegal

drugs and that he had multiple speeding tickets while driving Onsite vehicles, but Onsite did not reprimand or train him and instead continued to let him drive Onsite vehicles.

It is true that "in automobile-collision cases, punitive damages are not recoverable where the driver at fault simply violated a rule of the road[.]" *McKnight v. Love*, 369 Ga. App. 812, 819 (1) (a) (894 SE2d 110) (2023) (citation and punctuation omitted), reversed in part on other grounds by *Love v. McKnight*, 321 Ga. 196 (913 SE2d 614) (2025). But this case does not necessarily involve simply a violation of a rule of the road, such as crossing the centerline, but also includes a triable issue as to whether Parris was driving while under the influence of methamphetamine at the time of the collision. Moreover,

> we have never held that showing a pattern or policy of dangerous driving[, such as speeding or driving while intoxicated,] is the only path to an award of punitive damages in automobile-collision cases. Indeed, even in cases that have not involved a pattern or policy of dangerous driving, we have concluded there was evidence by which a jury could consider the question of punitive damages.

*McKnight v. Love*, supra at 818 (1) (a) (citations and emphasis omitted). Given the genuine issues of material facts in the instant case, we conclude that there is evidence

15

from which a jury could consider the issue of punitive damages. So the trial court properly denied summary judgment on that claim.

7. *Attorney fees*

"The expenses of litigation generally shall not be allowed as a part of the damages; but where the plaintiff has specially pleaded and has made prayer therefor and where the defendant has acted in bad faith, has been stubbornly litigious, or has caused the plaintiff unnecessary trouble and expense, the jury may allow them." OCGA § 13-6-11. "[T]he element of bad faith that will support a claim for expenses of litigation under OCGA § 13-6-11 must relate to the acts in the transaction itself prior to the litigation, not to the motive with which a party proceeds in the litigation." *David G. Brown, P. E. v. Kent*, 274 Ga. 849, 850 (561 SE2d 89) (2002).

In this case, the same evidence discussed above which supported the trial court's denial of summary judgment on the claim for punitive damages also supports the denial of summary judgment on the claim for attorney fees under OCGA § 13-6-11. "Just as this evidence [created genuine issues of material fact as to whether the Gooches may be] entitled to punitive damages under OCGA § 51-12-5.1 (b), it constitutes [some] evidence [creating a triable issue as to whether Onsite] acted in bad

16

faith toward [the Gooches.]" *Taylor v. Devereux Foundation*, 316 Ga. 44, 90 (VII) (885 SE2d 671) (2023). "Thus, we conclude that the evidence . . . was sufficient to [create a genuine issue of material fact as to whether they were] entitled to attorney fees under OCGA § 13-6-11." Id.

*Case No. A26A0425*

8. *OCGA § 40-2-140 (d) (4)*

AMCO argues that the trial court erred in denying its motion for summary judgment because the direct action brought against it was not authorized by OCGA § 40-2-140 (d) (4). AMCO's argument is without merit.

The general rule in Georgia is that "a party may not bring a direct action against the liability insurer of the party who allegedly caused the damage unless there is an unsatisfied judgment against the insured or it is specifically permitted either by statute or a provision in the policy." *Hartford Ins. Co. v. Henderson & Son*, 258 Ga. 493, 494 (371 SE2d 401) (1988). OCGA § 40-2-140 (d) (4) (2021) provides such an exception to this general rule by allowing for a direct action against a motor carrier's insurer. The applicable version of OCGA § 40-2-140 (d) (4) (2021) provides, "Any person having a cause of action, whether arising in tort or contract, under this Code section

17

may join in the same cause of action the *motor carrier* and its insurance carrier."[2] (Emphasis supplied).

AMCO argues that this code section does not authorize the direct action against it because its insured, Onsite, is not a "for-hire" motor carrier as required by that code section. But the plain language of the code section, as emphasized above, clearly does not limit its application to "for-hire" motor carriers. Rather, the plain language provides for a direct action against a "motor carrier" and its insurer, with no reference to for-hire motor carriers.

In arguing otherwise, AMCO mistakenly relies on subsection (2) of OCGA § 40-2-140 (d), which concerns a specific insurance filing requirement applicable to a "for-hire intrastate motor carrier." AMCO ignores the word "intrastate" in that term and posits that its "for-hire" language should be glommed onto the plain language of the direct action provision of OCGA § 40-2-140 (d) (4) to modify the term "motor carrier," thus making that provision applicable only to actions against "for-hire motor carriers." But there is nothing in the statutory language which would allow for such

---

[2] The parties agree that this version of the statute applies to the instant case. The current version of OCGA § 40-2-140 became effective July 1, 2024. Ga. L. 2024, p. 966, § 2.

a modification. On the contrary, the terms "for-hire intrastate motor carrier" and "motor carrier" have distinct and different meanings within that statutory scheme. See OCGA §§ 40-2-1 (4) and (6) (respectively defining the terms "for-hire intrastate motor carrier" and "motor carrier").

"In interpreting statutes, we presume that the General Assembly meant what it said and said what it meant." "When we consider the meaning of a statute, we must presume that the General Assembly meant what it said and said what it meant." *Deal v. Coleman*, 294 Ga. 170, 172 (751 SE2d 337) (2013) (citation and punctuation omitted). Accord *Langley v. State*, 313 Ga. 141, 143 (2) (868 SE2d 759) (2022). So contrary to AMCO's argument, we presume that the General Assembly, in using the defined term "motor carrier" in OCGA § 40-2-140 (d) (4), meant "motor carrier" and did not mean "for-hire motor carrier." AMCO has thus failed to show that the trial court's denial of summary judgment should be reversed on this ground.

*Judgments affirmed. Watkins and Padgett, JJ., concur.*