## JONES *v.* GILPIN, administrator.

The petition set forth a cause of action which was not subject to any of the grounds stated in the demurrer.

           Submitted July 18, 1906.—Decided January 17, 1907.

Complaint for land. Before Judge Freeman. Heard superior court. November 24, 1905.

Gilpin, as administrator of Lewis Gibson, brought an equitable petition against Frank S. Jones and others, alleging, that all of the defendants, with the exception of Jones, were the children of Lewis Gibson by a first marriage, and were his heirs at law, the oldest being forty years of age and the youngest twenty-two. Lewis Gibson contracted a second marriage, and at his death was survived by his widow, Annie Gibson, aged seventeen years, and an infant son. His second marriage was bitterly opposed by his children of the former marriage, and this is the motive for the fraudulent conduct hereinafter referred to.

He was the owner of several tracts of land and some personal property. On December 12, 1902, he was taken sick with a serious ailment, and on April 22, 1903, died from the effect thereof. During all of the time just referred to, his mind and body were so weak from disease that he had no will of his own and was unable to resist the importunity of his children, who had undue influence over him, and most of the time he was irrational and crazy. While he was in this condition all of his children by the former marriage (who are the defendants in this case) entered into a conspiracy to defraud his widow and infant son out of any interest in the estate. They em-

ployed an attorney, and, as a part of the scheme to defraud, had deeds to the different defendants prepared, which purported to be executed at the time when Lewis Gibson was in the mental and physical condition above described. They concealed the fact of the execution of these deeds from the attending physician, and also from his widow, and no record of the same was made until after his death. As a part of this fraudulent scheme they, over his protest and that of his wife and the physician, forcibly removed him from his home, where he was living with his wife, who, with her mother, was giving him all the attention that he needed, and carried him to the home of his daughter, where he died. The infant son above referred to was born after he had been removed from his home, and he was never permitted to see this child, although the mother sought to bring the child to him during the time that he was at his daughter's house. In each instance the wife was driven from the house by the daughter. The deeds referred to are described with particularity in the petition. Some of them conveyed land alone, and others conveyed land and articles of personal property. The defendants have possessed themselves of all of the property of Lewis Gibson, and his wife and her infant son are penniless and without means of support. When the defendants, who were the heirs at law of Lewis Gibson, became aware that the widow and her minor son were proceeding to have their interests in the estate turned over to them, they conceived a scheme of obtaining a purchaser of the property, who would receive the title and pay them the money, which could then be divided and placed beyond the control of the legal representative of their father's estate. The defendant Jones was the person thus selected, and he purchased the property from the heirs for $800, which was less than half the cash value of the property. It is alleged, that Jones was not an innocent purchaser; that he had notice of all the fraudulent acts above described; that the attorney employed by him was the same attorney who was representing the defendants in their fraudulent scheme; that he knew that the widow was living at the late home of Lewis Gibson, on the land, and that she claimed an interest in the land; that after the fraudulent sale to Jones, the other defendants came together, and, assisted by their attorney, who was also the attorney of Jones, divided the money between themselves, thus consummating, as they hoped and believed, their nefarious scheme.

The deeds to Jones have been recorded, and an abstract of these deeds is set forth in the petition. The defendant Jones has ordered the widow to leave the house of her deceased husband, and is threatening to eject her. He claims to have rented the land for the year, and is claiming the rent and proceeding to collect it. The prayers of the petition are, that Jones be enjoined from ejecting the widow from the home of her late husband, or from disturbing or interfering in any way with the peaceable enjoyment of the same; that he be enjoined from collecting the rent; that a receiver be appointed; that all of the deeds described in the petition, from Lewis Gibson to the other defendants, and from the other defendants to Jones, be declared null and void, and be delivered up and cancelled; and that the plaintiff have a judgment for rent and mesne profits, and also $200 for attorney's fees.

To this petition the defendant interposed a demurrer, in which it was contended, that the petition set forth no cause of action, either at law or in equity; that the plaintiff had a complete remedy at law; that the allegations were not sufficient to justify or authorize the granting of an injunction or the appointment of a receiver; that there is nothing in the averments which would authorize a judgment for attorney's fees; that there is a misjoinder of parties defendant, and that the petition is multifarious.

*Russell & Hawes,* for plaintiff in error.

*Donalson & Donalson,* contra.

Cobb, P. J. (After stating the facts.) The demurrer came on to be heard after the first term, and therefore the only question to be determined is whether the petition, as against the points made in the demurrer, set forth a cause of action which should be submitted to a jury in the event that the allegations are sustained by proof. The prayers for ancillary relief, in the way of an injunction and receiver, may therefore be eliminated from the discussion. The only question is whether the allegations are sufficient to authorize a decree of cancellation. It is contended that the plaintiff has a complete remedy at law, by an action of ejectment to recover the possession of the premises, and that upon the trial of such an action the deeds can be attacked upon the grounds set forth in the petition as effectually as they can be in a proceeding in equity. While there is no distinct prayer for the recovery of the possession of the land, there is a prayer for the recovery of mesne profits,

which would indicate that the defendants were in possession of the property, except the home in which the widow was living; there being an allegation that she was in possession of that portion of the property. The petition might be, therefore, well treated as an action for the recovery of the land; and if so, of course, there would be no reason for dismissing this petition and requiring the plaintiff to file another in which the same result could be accomplished. In fact, since the "uniform procedure act" of 1887, a petition which sets forth a legal cause of action, though couched in terms appropriate to an equitable proceeding, in so far as the same does not seek any extraordinary relief, will not be dismissed as a whole, upon the ground that the plaintiff has an adequate remedy by an action at law. *Teasley* v. *Bradley,* 110 *Ga.* 498(4). If the petition be construed as an action for the recovery of the land, with a prayer for equitable relief by a decree cancelling the deeds, of course the demurrer was properly overruled. But suppose the petition should be construed as merely an application for equitable relief by a decree for cancellation. The allegations are sufficient to authorize a decree that the deeds were void on the ground that the grantor had no capacity to contract or to make a gift, at the time they were made, even if they were not sufficient to authorize a decree upon the ground that they were forgeries. The administrator is not only entitled to recover the land for the purpose of administration of the estate of the intestate, but he is also entitled to any relief that the owner of the land would be entitled to in order to free the property from a cloud that might hover over the title. That these deeds, if void for the reason that the grantor had no capacity to make them, are clouds upon the title of the estate that he represents, admits of little question. See *Watkins* v. *Nugen,* 118 *Ga.* 375(8), 380, and cit.

The scheme originated, according to the averments, with the children of the first marriage. To accomplish this scheme it was necessary for a stranger and outsider to be used as a party. This party was found in the defendant Jones; and, under the allegations, he had notice of the fraudulent scheme that was to be perpetrated on the widow and her infant child, and became a purchaser of the property with full notice of the fraud of his vendors. In one place it is alleged that he had notice of the fraud, and in another place it is alleged that he had notice of such circumstances as would put

a prudent person upon inquiry. These allegations are sufficient to call for an answer from him as to whether he was a party to the fraudulent scheme, or, in fact, an innocent purchaser without notice.

While, as a general rule, the expenses of litigation are not allowed to be recovered, still, if the defendants have acted in bad faith, the jury is authorized to allow them. Civil Code, § 3796. If the allegations in the petition are true, the defendants, and all of them, have certainly acted in bad faith. The case is one peculiarly appropriate for the assessment of the expenses of litigation, if the plaintiff should establish the truth of the allegations.

*Judgment affirmed. All the Justices concur, except Fish, C. J., absent.*