NOTICE: This opinion is subject to modification resulting from motions for reconsideration under Supreme Court Rule 27, the Court's reconsideration, and editorial revisions by the Reporter of Decisions. The version of the opinion published in the Advance Sheets for the Georgia Reports, designated as the "Final Copy," will replace any prior version on the Court's website and docket. A bound volume of the Georgia Reports will contain the final and official text of the opinion.

In the Supreme Court of Georgia

Decided: March 4, 2025

S24G0371.  LOVE v. MCKNIGHT.

BOGGS, Chief Justice.

We granted certiorari in this case to consider the Court of Appeals's determination that evidence of a party's violations of traffic laws is sufficient to create a jury question as to whether that party acted in bad faith for purposes of authorizing an award of expenses of litigation under OCGA § 13-6-11.[1] See *McKnight v. Love*, 369 Ga. App. 812, 822-824 (894 SE2d 110) (2023). We determine that the Court of Appeals's analysis is inconsistent with the proper interpretation of "bad faith" under OCGA § 13-6-11 and that applying the correct standard, there was insufficient evidence of bad faith to submit the issue to the jury. Accordingly, we reverse.

1.  John McKnight filed a lawsuit against Anthony Love

---

[1] This case was orally argued on August 21, 2024.

seeking damages arising out of a vehicular accident. The facts, as set forth by the Court of Appeals, are as follows:

> [E]arly in the morning of November 13, 2019, both McKnight and Love were traveling in stop-and-go traffic on I-20 in DeKalb County. McKnight was driving his 2011 Chevrolet Silverado truck, and Love followed closely behind him in a 2007 Chevrolet Tahoe. As the two drove along I-20, traffic slowed ahead, and McKnight applied his brakes and stopped his vehicle—but Love forcefully hit McKnight from behind. Just prior to impact, McKnight peered into his rearview mirror and saw that Love would be unable to stop. Although McKnight could not see Love inside of the vehicle (and so he could not tell what Love was doing right before the accident), he believed Love was distracted because he was "coming pretty fast" when other vehicles had already stopped. And there is evidence that in the 20 minutes Love spent driving that morning, he continuously made and received phone calls on his cell phone.
>
> McKnight's truck was damaged, and he sustained injuries to his back and knee, which required a hospital visit and subsequent medical care. Love was cited by police for following too closely and later pleaded guilty to that offense.

*McKnight*, 369 Ga. App. at 813.

McKnight sought compensatory and punitive damages and expenses of litigation under OCGA § 13-6-11, which provides:

> The expenses of litigation generally shall not be allowed as a part of the damages; but where the plaintiff has

2

specially pleaded and has made prayer therefor and where the defendant has acted in bad faith, has been stubbornly litigious, or has caused the plaintiff unnecessary trouble and expense, the jury may allow them.

As relevant to the issue presented here, Love moved for partial summary judgment on the OCGA § 13-6-11 claim, arguing that there was no evidence that he acted in bad faith.[2] However, the trial court denied the motion, ruling that there was evidence sufficient to create a jury question as to bad faith. That evidence, according to the trial court, consisted of Love's cell phone records that purported to show that Love was using his cell phone during or right before the collision and McKnight's testimony that Love "looked distracted

---

[2] Love also moved for partial summary judgment on the issues of negligence per se based on driving too fast for conditions, failing to exercise due care, driving while distracted, and driving recklessly; punitive damages; and expenses of litigation based on stubborn litigiousness under OCGA § 13-6-11. The trial court denied the motion as to the negligence per se claims but granted it as to the claims for punitive damages and expenses of litigation based on stubborn litigiousness. Love did not challenge the rulings on the claims asserting negligence per se. McKnight appealed the rulings as to punitive damages and stubborn litigiousness, but the Court of Appeals affirmed both rulings. See *McKnight*, 369 Ga. App. at 820-822. McKnight did not file his own petition for certiorari, and so the claims for punitive damages and litigation expenses based on stubborn litigiousness are not at issue here.

3

right before the collision," although the trial court also noted that Love testified that his vehicle was equipped with Bluetooth, a hands-free technology for talking on a cell phone.[3] The trial court also denied Love's motion for partial summary judgment on the claims that he was driving too fast for conditions, driving while distracted, driving recklessly, and failing to exercise due care. However, the trial court did not rely on the facts supporting those claims in finding a genuine issue of material fact as to bad faith.

Love appealed the trial court's ruling denying his motion for partial summary judgment as to whether there was evidence that he acted in bad faith sufficient to support a claim for expenses of litigation under OCGA § 13-6-11. In affirming, the Court of Appeals stated that "indicative of whether a party acts in good or bad faith

---

[3] Love testified that his truck was equipped with Bluetooth, that his cell phone was in a "phone mount" and was connected to Bluetooth at the time of the collision. Love filed a motion to strike his cell phone records and certain documents that McKnight contended showed that Love's vehicle was not equipped with hands-free technology. The trial court denied Love's motion as to the cell phone records but granted it as to the documents. Love did not appeal the ruling denying his motion to strike the cell phone records, and McKnight did not appeal the ruling granting the motion to strike the documents.

in a given transaction is 'his abiding by or failing to comply with a public law made for the benefit of the opposite party, or enacted for the protection of the latter's legal rights.'" *McKnight*, 369 Ga. App. at 823 (quoting *Nash v. Reed*, 349 Ga. App. 381, 383 (825 SE2d 853) (2019)). The Court of Appeals recited that the trial court had concluded that there was a genuine issue of material fact as to whether Love was using hands-free technology or whether he violated Georgia's hands-free law, see OCGA § 40-6-241 (c), by failing to do so. However, the Court of Appeals did not address whether the trial court erred in that determination. *McKnight*, 369 Ga. App. at 823-824. Instead, the Court of Appeals relied on the fact that Love pleaded guilty to following too closely and noted McKnight's argument at trial and on appeal "that there is evidence to create a genuine issue of material fact on *multiple* potential violations of Georgia traffic laws." Id. at 823-824 (emphasis in original).

2. The only issue in this appeal is the Court of Appeals's ruling that there was evidence sufficient to support a claim for litigation

expenses under OCGA § 13-6-11 based on Love's bad faith. The term "bad faith" is not defined in OCGA § 13-6-11 or elsewhere in Title 13. Nevertheless, the language used in OCGA § 13-6-11, or language virtually identical to it, has been a part of Georgia law since the Code of 1860. See Ga. Code Ann. 1860, Part II, Title 7, Chapter IX, § 2883 (effective Jan. 1, 1863); *Taylor v. Dereveux Foundation, Inc.*, 316 Ga. 44, 116 nn.93-94 (885 SE2d 671) (2023) (Ellington, J., dissenting in part and concurring in the judgment only in part) (tracing statutory history of OCGA § 13-6-11). We have a wealth of case law interpreting the phrase "bad faith" in OCGA § 13-6-11 and its statutory predecessors, although we have not previously provided a precise definition of that phrase. And we need not provide a precise definition here because a review of our case law applying this provision provides sufficient and consistent parameters as to the scope of conduct that has been held to demonstrate "bad faith" or that has been excluded from that definition.[4]

---

[4] We note that no party challenges the soundness of our precedent or contends that we must address any novel interpretive questions about the meaning of "bad faith."

6

Applying that body of case law, as shown below, reveals that the type of conduct in the underlying transaction[5] that will support a claim for "bad faith" expenses of litigation in a tort action[6] requires conduct that is generally indicative of intentional wrongdoing or of a reckless disregard of known harmful consequences and must be more than mere negligence.

In one of the earliest cases discussing the type of evidence that would support a claim for bad faith expenses of litigation, we held that allegations, if true, that the defendants either concocted or knowingly participated in a fraudulent scheme to deprive a widow and her infant son out of any interest in her deceased husband's

---

[5] It is well-settled that conduct supporting bad-faith expenses of litigation must arise in the underlying transaction itself. See *Alston & Bird, LLP v. Hatcher Mgmt. Holdings, LLC*, 312 Ga. 350, 359 (862 SE2d 295) (2021).

[6] The majority of the cases in which we have considered claims for litigation expenses under OCGA § 13-6-11 or its predecessor have involved claims arising in tort. But we note that we have applied OCGA § 13-6-11 and its predecessors in actions for breach of contract. See, e.g., *SRM Group, Inc. v. Travelers Prop. Casualty Co. of America*, 308 Ga. 404, 410 (841 SE2d 729) (2020) (holding that party was entitled to seek attorney fees under OCGA § 13-6-11 based on claim for breach of contract asserted in counterclaim); *Traders' Ins. Co. v. Mann*, 118 Ga. 381, 381 385-386 (45 SE 426) (1903) (construing predecessor to OCGA § 13-6-11, describing conduct that could constitute bad faith in an action on an insurance policy, and holding that a mere refusal to pay does not constitute bad faith).

estate would demonstrate that the defendants acted in bad faith sufficient to authorize the recovery of litigation expenses under a predecessor to OCGA § 13-6-11. See *Jones v. Gilpin*, 127 Ga. 379, 383 (56 SE 426) (1907). And in our most recent case addressing such evidence, we stated that a jury's finding that the defendant acted in bad faith was supported by evidence showing that the defendant was "consciously indifferent to the consequences of its failure to . . . give [the plaintiff] appropriate and adequate supervision," which failure led to the plaintiff being sexually assaulted. *Taylor*, 316 Ga. at 90.

*Jones*, *Taylor*, and the other cases we have decided under OCGA § 13-6-11, or one of its predecessors, consistently describe the type of conduct that is sufficient to support a claim for bad-faith expenses of litigation as intentional, wanton, reckless, or at least indicative of a conscious indifference to the consequences.[7] See, e.g.,

---

[7] Although not cited by the parties, we note that in *General Refractories Co. v. Rogers*, we said that in the absence of proof of an intentional tort, there was insufficient evidence to support a claim for bad faith under a predecessor to OCGA § 13-6-11, stating: "having held the plaintiff did not prove an intentional tort the element of bad faith is eliminated from further consideration in passing on attorney's fees." 240 Ga. 228, 235 (239 SE2d 795)

*Merlino v. City of Atlanta*, 283 Ga. 186, 188-190 (657 SE2d 859) (2008) (reversing grant of summary judgment to the defendant on the plaintiff's claim for expenses of litigation where there was evidence from which the jury could determine the defendant acted in bad faith by plugging underground pipe despite knowing that the plaintiff's property would flood as a consequence and did not unplug the pipe even after the property flooded multiple times); *Tyler v. Lincoln*, 272 Ga. 118, 120-121 (527 SE2d 180) (2000) (stating that where the question of the defendant's commission of an intentional

---

(1977) (cleaned up). However, in *Rogers*, we made this statement only after detailing the evidence and holding that it did not support a claim for punitive damages because there was no evidence of willful or wanton conduct or conduct "exemplifying conscious indifference to consequences." Id. at 230-234. *Rogers* has never been cited by this Court for the categorical proposition that evidence of an intentional tort is required to support a claim for litigation expenses based on bad faith. And importantly, *Rogers*'s outlier statement is, in some meaningful respects, inconsistent with *Taylor*, a more recent case in which we upheld an award of bad-faith litigation expenses even though there was an absence of evidence of intentional misconduct on the defendant's part. See *Taylor*, 316 Ga. at 55, 90. Accordingly, we are bound to follow *Taylor* and recognize that *Rogers*'s language has been implicitly overruled to the extent it holds that expenses of litigation under OCGA § 13-6-11 based on bad faith cannot be awarded if there is no proof of an intentional tort. See *White v. State*, 305 Ga. 111, 122 n.10 (823 SE2d 794) (2019) ("When a high court finds discordant opinions among its own horizontal precedents, the court generally follows its decision in the most recent case, which must have tacitly overruled any truly inconsistent holding." (cleaned up)).

tort remained for the jury, "the claim for attorney fees rooted in bad faith concerning those actions should have also been left for the jury"); *Baker v. Miller*, 265 Ga. 486, 486 (458 SE2d 621) (1995) (describing defendant's "series of misrepresentations" as evidence of bad faith sufficient to support award of attorney fees); *City of Dublin v. Hobbs*, 218 Ga. 108, 110 (126 SE2d 655) (1962) (holding that there was no error in charging the jury regarding a claim for attorney fees that "every intentional tort invokes the species of bad faith that entitles a person wronged to recover the expenses of litigation involving attorney's fees"); *Cook v. Robinson*, 216 Ga. 328, 332 (116 SE2d 742) (1960) (holding that claim for attorney fees was adequately alleged in the complaint where bad faith was "sufficiently inferable from the tortious acts allegedly committed willfully and wantonly pursuant to a conspiracy to destroy the petitioner's business"); *Williams v. Harris*, 207 Ga. 576, 579 (63 SE2d 386) (1951) (holding that award of attorney fees based on bad faith was authorized by evidence that the defendant, after selling land to the plaintiff, willfully trespassed on that land, repeatedly

10

removed stakes marking the boundaries of that land, and erected permanent obstructions to exclude plaintiff from the property plaintiff had purchased); *Grant v. Hart*, 197 Ga. 662, 672 (30 SE2d 271) (1944) (holding that there was no error in submitting claim for expenses of litigation to jury where defendant was alleged to have acted fraudulently in a stock transaction).

While at one end of the spectrum, intentional or egregious misconduct will often suffice to support a claim for expenses of litigation based on bad faith,[8] at the other end, we have rejected the idea that mere negligence constitutes bad faith for purposes of

---

[8] Notably, we have long held that conduct that will support a claim for punitive damages will also support a claim for expenses of litigation under OCGA § 13-6-11 based on bad faith. See, e.g., *Taylor,* 316 Ga. at 89-90 (evidence that supported jury's determination that punitive damages were warranted, also supported the jury's finding of bad faith under OCGA § 13-6-11); *Ponce de Leon Condominiums v. DiGirolamo*, 238 Ga. 188, 190 (232 SE2d 62) (1977) ("The same testimony as to the appellee's early, persistent, and unheeded complaints which authorizes the verdict for punitive damages in this case also provides authorization for the jury's finding that the appellants acted in bad faith in failing to correct the run-off problem."); *Walker v. Grand Int'l Brotherhood of Locomotive Engineers*, 186 Ga. 811, 821-822 (199 SE 146) (1938) (concluding that allegations that were sufficient to authorize a claim for punitive damages were sufficient to state a claim for bad faith expenses of litigation under a predecessor to OCGA § 13-6-11).

awarding attorney fees. See, e.g., *Greenway v. Hamilton*, 280 Ga. 652, 655 (631 SE2d 689) (2006) (affirming an award of attorney fees against an executor where evidence showed he had acted in bad faith and stating, "bad faith is not simply bad judgment or negligence, but a breach of known duty through some motive of interest or ill will" (cleaned up)). This conclusion is consonant with our determinations in other contexts where we have similarly explained that bad faith is not demonstrated by mere negligence. See, e.g., *In the Matter of Coomer*, 315 Ga. 841, 860 (885 SE2d 738) (2023) (in connection with judicial disciplinary proceeding, stating that "to qualify as 'actions taken in bad faith,' an action must involve something more than negligence"); *State v. Bryant*, 307 Ga. 850, 854 (838 SE2d 855) (2020) (in connection with claim for sanctions for failure to comply with discovery obligations, stating that "inherent in the concept of bad faith is something more than negligence" (cleaned up)); *Allright Auto Parks, Inc. v. City of Atlanta*, 257 Ga. 315, 318 (357 SE2d 797) (1987) (in considering whether government pursued condemnation in bad faith, stating, "we have distinguished bad faith from

12

negligence and have gone so far as to equate it with conscious wrongdoing motivated by improper interest or by ill will" (cleaned up)). And the Court of Appeals has similarly held that mere negligence or bad judgment is insufficient to show bad faith for purposes of OCGA § 13-6-11. See, e.g., *MARTA v. Mitchell*, 289 Ga. App. 1, 4 (659 SE2d 605) (2007) ("Bad faith is not simply bad judgment or negligence, but it imports a dishonest purpose or some moral obliquity, and implies conscious doing of wrong, and means breach of known duty through some motive of interest or ill will." (cleaned up)).[9]

3. We now consider whether the Court of Appeals's reasoning here is consistent with our precedent. As noted above, the Court of Appeals held that one way to show bad faith would be to demonstrate a party's "failing to comply with a public law made for

---

[9] To the extent that the Court of Appeals's holding in this case is inconsistent with *MARTA*, we note that the Court of Appeals's panel decision here could not overrule its earlier decision. See *White*, 305 Ga. at 121 (explaining that older decisions of the Court of Appeals are binding on later panels until reversed or overruled by this Court or overruled by the Court of Appeals).

the benefit of the opposite party, or enacted for the protection of the latter's legal rights," and that violations of traffic laws would meet this standard. *McKnight*, 369 Ga. App. at 823 (cleaned up). In reaching this conclusion, the Court of Appeals cited *Nash*, 349 Ga. App. at 383-384, and *Windermere, Ltd. v. Bettes*, 211 Ga. App. 177, 179 (438 SE2d 406) (1993). However, neither case supports the proposition that the mere violation of a traffic law is, by itself, sufficient evidence of bad faith within the meaning of OCGA § 13-6-11. In *Nash*, the plaintiff was hit by a car while he was running in the road. The plaintiff sued the driver of the car and included a claim for expenses of litigation under OCGA § 13-6-11. The trial court granted the driver's motion for summary judgment on the claim for expenses of litigation, but the Court of Appeals reversed. The Court of Appeals concluded that the following evidence was sufficient to submit the issue of bad faith to the jury: the driver had seen the plaintiff and knew that the plaintiff did not see the driver's vehicle; the driver made a decision not to sound his horn to alert the plaintiff; the driver chose not to stop to allow the plaintiff to finish crossing

14

the road; and the driver crossed a double yellow-line as he tried to avoid the plaintiff. *Nash*, 349 Ga. App. at 383-384. Although the Court of Appeals noted that "traffic laws generally prohibit" crossing a double yellow-line, id. at 384, it did not rely solely on the violation of a traffic law in reciting evidence of bad faith. Rather, it focused on the driver's conscious decisions not to alert the plaintiff by honking and to not stop. And other than *Nash*, the parties have not pointed us to any case, and we see none, in which the violation of a traffic law was the sole basis to support a claim for bad faith expenses of litigation. Moreover, traffic offenses, which are set out in Chapter 6 of Title 40 ("Uniform Rules of the Road"), "are 'strict liability' offenses, meaning that they can be committed without a culpable mental state." *State v. Ogilvie*, 292 Ga. 6, 8 (734 SE2d 50) (2012). Accordingly, violations of strict liability traffic offenses do not, by themselves, establish "the specific intent or wrongful purpose that is an element of other crimes." Id. at 9. Thus, the violation of a traffic law, by itself, does not show the type of intentional or reckless conduct that has been required under the case law set forth above to

demonstrate bad faith.

*Windermere* is likewise distinguishable. In that case, the Court of Appeals held that the "circumstances whereby the landlord failed to exercise any effort to comply with the mandatory safety provisions of an applicable fire or building exit code" supported the jury's award of punitive damages and expenses of litigation under OCGA § 13-6-11. 211 Ga. App. at 178-179. *Windermere* is consistent with the long line of precedent from this Court, cited above, holding that evidence that is sufficient to establish a claim for punitive damages is also sufficient to state a claim for bad-faith expenses of litigation under OCGA § 13-6-11. Thus, *Windermere* does not support the proposition that the violation of a traffic law is itself sufficient to establish bad faith. Because *Nash*, 349 Ga. App. at 383-384, and *Windermere*, 211 Ga. App. at 179, are inapposite, we conclude that the Court of Appeals erred in determining that the negligent violation of a traffic law by itself will support a claim for expenses of litigation under OCGA § 13-6-11 based on bad faith.

4. Next, we consider the evidence presented here. McKnight

16

points to no evidence in the record, and we see none, showing that Love's conduct in following too closely, to which he pleaded guilty, or his potential violations of other strict liability traffic laws was accompanied by an intent to injure, or done in a manner indicative of the sort of consciousness of wrongdoing or a similar culpable state of mind that has been held previously to support a claim for bad faith under OCGA § 13-6-11. Instead, the evidence, viewed in the light most favorable to McKnight as the party opposing summary judgment,[10] shows that Love was driving approximately 25 to 30 mph, well below the speed limit on the interstate highway, in stop-and-go traffic at rush hour, and that he applied his brakes before colliding with McKnight, who had stopped ahead of him.

Additionally, under McKnight's theory that Love was distracted because he was talking on his cell phone,[11] every

---

[10] See *Jones v. City of Atlanta*, 320 Ga. 239, 249 (908 SE2d 519) (2024).

[11] Apparently recognizing that there is no evidence in the record contradicting Love's testimony that his cell phone was connected to Bluetooth, McKnight does not argue here that evidence of bad faith is shown by Love's failure to use hands-free technology. Thus, we need not decide whether such evidence might in some circumstances constitute evidence that could be used to support a claim for litigation expenses based on bad faith.

17

automobile accident case involving cell phone use would present a jury question as to bad faith simply because the driver could have been distracted by a phone call. That scenario generally would raise, at most, an issue of negligence. Furthermore, an interpretation of OCGA § 13-6-11 that permits the award of litigation expenses in all negligence cases would conflict with the language of the statute that "[t]he expenses of litigation generally shall not be allowed as a part of the damages." Given this unambiguous prefatory statement, an interpretation of "bad faith" that would routinely allow the award of such damages based on merely negligent conduct would not be consistent with the statutory language, and in fact would contradict it. Thus, we reject any interpretation of "bad faith" that would allow expenses of litigation to be awarded in routine negligence cases. See *Monroe v. State*, 315 Ga. 767, 786 (884 SE2d 906) (2023) (explaining that we must give meaning to all words in a statute); *Camden County v. Sweatt*, 315 Ga. 498, 509 (883 SE2d 827) (2023) (stating that "courts generally should avoid a construction that makes some language mere surplusage." (cleaned up)); *Mateen v. Dicus*, 281 Ga.

455, 456 (637 SE2d 377) (2006) (rejecting interpretation that was contrary to statute's plain language).

In summary, the Court of Appeals applied an erroneous standard for "bad faith." And applying the understanding of bad faith that is consistent with our longstanding precedent, we conclude that there was insufficient evidence to submit the claim for bad faith expenses of litigation to the jury. Therefore, we reverse the Court of Appeals's judgment affirming the trial court's denial of Love's motion for partial summary judgment on the issue of expenses of litigation under OCGA § 13-6-11 based on bad faith.

*Judgment reversed. All the Justices concur.*